UNITED STATES of America,
Plaintiff,

v.

**900.57 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS; and John L. Koch, et al., and Unknown Owners, Defendants.**

Tracts Nos. 1301–1, 1301–2, 1301E, 1433.

UNITED STATES of America,
Plaintiff,

v.

**978.59 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS; and J. D. Ward, et al., and Unknown Owners, Defendants.**

Tracts Nos. 1600, 1806, 1806E.

UNITED STATES of America,
Plaintiff,

v.

**850.04 ACRES OF LAND, MORE OR LESS, IN JOHNSON AND LOGAN COUNTIES, ARKANSAS; and E. G. Park, et al., and Unknown Owners, Defendants.**

Tracts Nos. 1814, 1830, 1900–1, 1900–2, 1900E–1 to 1900E–5, 1913, 1913E–1, 1913E–3.

Civ. Nos. 1640, 1641, 1651.

United States District Court
W. D. Arkansas,
Fort Smith Division.
July 10, 1962.

---

Charles M. Conway, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Fort Smith, Ark., for plaintiff.

Sexton & Morgan, Fort Smith, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

Certain defendant landowners in each of the above cases have filed identical motions for production, inspection and copying of documents along with identical interrogatories to be answered by plaintiff, and have submitted brief in support of the motions and the interrogatories.

The plaintiff has filed identical objections to the interrogatories and to the motions for production, inspection and copying of documents. The plaintiff has also filed its brief in support of the objections.

Thus the issues before the court in each case are identical and will be considered and disposed of together.

CIVIL NO. 1640

The complaint was filed March 12, 1962, to acquire either the fee simple title in certain tracts or the perpetual right, power, privilege and easement occasionally to overflow, flood, and submerge certain other listed tracts.

Simultaneously with the filing of the complaint, a declaration of taking was filed and estimated just compensation deposited in the registry of the court for the interest sought to be acquired in each tract.

On March 15, 1962, the court entered an order requiring all owners and other interested parties in the tracts included in the complaint and declaration of taking to surrender possession of the property, "to the extent of the estate being condemned, to plaintiff within five days from

date of service of a copy of this order upon all persons in possession or control of the said property."

Tract No. 1301–1 consists of 8.12 acres, of irregular shape, along the left bank of the Arkansas River, located in Sections 12 and 13, Township 8 North, Range 23 West of the 5th Principal Meridian, in Johnson County, Arkansas.

Tract No. 1301–2 consists of 4.06 acres, of irregular shape, lying along the left bank of the Arkansas River, in Section 12, supra.

The fee simple title has been acquired in the above tracts.

Tract No. 1301E is a tract containing 2.50 acres situated along the River between the 350-foot contour and the "Fee Taking Line," as particularly described in the description of Tract No. 1301–2. A perpetual easement has been acquired in the above tract.

The above tracts are owned by Fay Blackburn of New York City, N. Y., and are covered by a mineral lease held by the Shell Oil Company.

Tract No. 1433 is an island located in the Arkansas River and contains approximately 78.00 acres lying above the ordinary high water line, and is a part of Section 35, Township 9 North, Range 23 West, in Johnson County, Arkansas. The fee simple title has been acquired to all of that part of the island lying above the ordinary high water line.

Mr. and Mrs. Frank Farris claim to be the owners of the island.

## CIVIL NO. 1641

The complaint was filed March 16, 1962, seeking to acquire the fee simple title and perpetual easements in the tracts included in the complaint. On the same day a declaration of taking was filed, and on March 19, 1962, the court ordered all persons in possession of the estate being condemned to surrender possession of the property within five days from the date of service of a copy of the order.

Tract No. 1600 was included in the complaint and the declaration of taking, but subsequent to the submission of the interrogatories and the filing of the motion herein, the property owners and the Government agreed upon just compensation for the estate taken in the land described as Tract No. 1600.

Tract No. 1806 is situated in Fractional Section 18, Township 9 North, Range 23 West, in Johnson County, Arkansas, and contains 121.50 acres. It is owned by Mr. and Mrs. Edward H. Kettelhut, and a mineral lease on it and other property is held by the Gulf Oil Corporation.

The fee simple title to the above tract has been acquired.

Tract No. 1806E, containing 3.0 acres, is situated west of Tract No. 1806 between the 354-foot contour and the "Fee Taking Line" as described in the description of Tract No. 1806. A perpetual easement on the tract has been acquired.

## CIVIL NO. 1651

The complaint in the above numbered case was filed May 3, 1962, along with a declaration of taking. On the same date the possession of the estate taken in each tract was ordered delivered to the plaintiff by those in possession thereof within five days from date of service of copy of the order.

Tract No. 1814 is situated in Sections 7 and 8, Township 9 North, Range 23 West, in Johnson County, Arkansas, and contains 48.00 acres. According to the declaration of taking it is owned by E. G. and Thelma Park and the fee simple title has been acquired, but Joan Walton has served interrogatories and filed motion relative thereto.

Tract No. 1830, consisting of 5.32 acres, of irregular shape, is situated in Section 8, Township 9 North, Range 23 West, in Johnson County, Arkansas. It is owned by Roy Farris and the fee simple title has been acquired.

Tract No. 1900–1 is irregular in shape, situated in Sections 12, 13 and 18 in Township 9 North, Range 24 West, in Johnson County, Arkansas, and contains 268.59 acres.

Tract No. 1900–2 is very irregular in shape, situated near the south line of Tract No. 1900–1, and consists of 1.88 acres.

The fee simple title to both tracts has been acquired.

Tract No. 1900E–1 joins Tract No. 1900–1 on the west, while Tracts Nos. 1900E–2, 1900E–3, 1900E–4 and 1900E–5 join Tract No. 1900–1 on the east.

The five tracts above listed contain in the aggregate 15.0 acres. A perpetual flowage easement has been acquired on the tracts. All of the above tracts are owned by George L. Morgan, Jr., and Geraldine Morgan, his wife.

Tract No. 1913 is irregular in shape and contains 12.03 acres, situated in Sections 11 and 14, Township 9 North, Range 24 West. The fee simple title has been acquired to this tract.

Tracts Nos. 1913E–1 and 1913E–3 are irregular in shape and in the aggregate contain 17.0 acres, lying northwest of Tract No. 1913.

Apparently the surface rights in the three tracts mentioned immediately above are owned by J. R. Qualls and wife, while Leslie E. Bryant and wife claim to be the owners in fee simple of the minerals, if any, lying under the surface.

The first interrogatory propounded by the landowners asks that the plaintiff advise them of the "name and address of each person who has expressed to the United States of America a statement or opinion regarding, or with reference to, the value of the lands * * *."

Generally, interrogatories 2, 3, 4 and 5 request the date or dates on which such persons viewed the lands; the highest and best use to which each person claimed the lands could be used; the value placed by such person upon the entire tract and the value placed upon the remainder; whether the person, in determining the values, considered comparable sales, capitalization of income or any other basis.

Interrogatory 7 requests the name and address of "each and every person known to the United States who has knowledge of the area, or acreage * * * which is being taken."

Interrogatory 8 requests the name and address of "each and every person known to the United States who has knowledge of the character, condition and value of the lands * * * as of the date of taking * * *."

Interrogatory 9 requests the name and address of "each and every person who reviewed or evaluated the appraisals of the land * * *, appraisals referring to statements of value of the lands prepared by the persons listed in Interrogatory No. 1."

Interrogatory 10 requests the name and address and job title of "the person who determined or fixed the amount of deposit to be deposited by the United States upon the taking of the lands * * *."

The motion for production, inspection and copying of documents requests that the court order the United States "to produce and to permit defendant to inspect and to copy each of the following documents:

"(a) full and complete copies of each and every written appraisal, or statement of value, of the captioned lands, which appraisal was prepared by the agents, servants, employees or independent contractors retained by the United States of America, for the purpose of preparing appraisals of these lands, which appraisals were prepared prior to the date of taking by the United States of America in the captioned case."

It is further alleged in the motion that the plaintiff has possession, custody and control of the above described documents, and that each document constitutes or contains evidence relevant and material to a matter involved in the action. The motion also refers to Exhibit A, which is an affidavit of the landowners to the effect that prior to the taking of the lands, various representatives of the United States, claiming to be appraisers,

visited and viewed the lands, and in each instance "the person described himself as an appraiser and indicated to the defendants that the lands described in the caption hereof were of a greater value than the amount deposited by the Government at the time of the taking."

The Government objects to the interrogatories on the ground that they "call for conclusions of experts who have been hired by the United States of America for their expert opinion and information sought by the interrogatories is privileged," and further objects on the ground that the use of the interrogatories as propounded is in conflict with Rule 1 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which provides for the " * * * speedy, and inexpensive determination of every action."

The plaintiff objects to the motion for production, inspection and copying of documents on the grounds that:

"1. Said motion calls for conclusion of experts who have been hired by the United States of America for their expert opinion and information sought by the motion is privileged.

"2. The use of discovery of the documents described in said motion is in conflict with Rule 1 of the Federal Rules of Civil Procedure which provides for the speedy and inexpensive disposition of cases."

It will be observed that in Civil No. 1640 the Government has acquired the fee simple title in Tracts 1301–1 and 1301–2, aggregating 12.16 acres, and a perpetual flowage easement has been acquired in Tract 1301E containing 2.50 acres.

The declaration of taking provides:

"The fee simple title to Tracts * * * 1301–1 and 1301–2 * *, subject to existing easements for public roads and highways, public utilities, railroads and pipelines, reserving, however, to the owner or owners of any interest herein, including third party lessees, their heirs, successors, and assigns, all oil, gas and other minerals in and under said land with full rights of ingress and egress for exploration, development, production and removal of said oil, gas and other minerals, provided that the said oil, gas and other minerals so reserved are subordinated to the prior right of the United States to flood and submerge the land as may be necessary in the operation and maintenance of the Dardanelle Lock and Dam Project * * *.'"

The declaration of taking in reference to the easement on Tract 1301E provides:

"The perpetual right, power, privilege and easement occasionally to overflow, flood and submerge * * Tract 1301E * * * and to maintain mosquito control in connection with the operation and maintenance of the Dardanelle Lock and Dam Project as authorized by the Act of Congress approved July 24, 1946 (60 Stat. 634), together with all right, title and interest in and to the structures and improvements now situate on the land, except those pertaining to the exploration or exploitation of oil, gas and other minerals; provided that no structures for human habitation shall be constructed or maintained on the land; and provided further that the District Engineer, U. S. Army Engineer District, Little Rock, Arkansas, or his duly authorized representative, shall approve the type and location of any structures and/or appurtenances thereto now existing or to be erected or constructed on the land; provided further that any exploration or exploitation of oil, gas and other minerals shall be subject to Federal and State laws with respect to pollution and shall not create floatable debris; reserving, however, to the landowners, their heirs and assigns, all such rights and privileges as may be used

and enjoyed without interfering with or abridging the rights and easements hereby acquired; the above estate is taken subject to existing easements for public roads and highways, public utilities, railroads and pipelines."

The owner of the above named tracts, Fay Blackburn, has alleged that the tracts constitute a part of a larger tract consisting of 188.71 acres. No mention is made of severance damages, but it may be anticipated that the landowner will claim severance damages.

The fee simple title to Tract No. 1433, owned by Mr. and Mrs. Frank Farris, has been acquired. Apparently no severance damage will be claimed.

In Civil No. 1641 the fee simple title to Tract 1806, containing 121.05 acres, has been acquired while in Tract 1806E, containing 3.0 acres, a perpetual easement has been acquired.

The landowners, Mr. and Mrs. Edward H. Kettelhut, have not filed any answer. Apparently no claim for severance damage will be involved.

In Civil No. 1651 the fee simple title to Tract 1814, containing 48.00 acres, has been acquired. Apparently no severance damage is involved. According to the declaration of taking title was in E. G. and Thelma Park, but Joan Walton, claiming to be the owner, has served identical interrogatories and filed identical motions for production of documents as were filed by the other listed landowners.

Tract 1830, containing 5.32 acres, owned by Roy Farris has been acquired. It seems to be a part of a larger tract and doubtlessly severance damages will be involved.

The fee simple title to Tracts 1900–1 and 1900–2, owned by Mr. and Mrs. George L. Morgan, has been acquired aggregating 270.47 acres. Apparently no severance damage is involved on these two tracts.

A perpetual flowage easement has been acquired on Tracts 1900E–1, 1900E–2, 1900E–3, 1900E–4 and 1900E–5, containing 15.0 acres.

The fee simple title has been acquired in Tract 1913, containing 12.03 acres, while a perpetual easement has been acquired on Tracts 1913E–1 and 1913E–3, aggregating 17.0 acres.

Apparently there will be no claim for severance damage as to the tracts listed immediately above.

According to the record the surface rights are owned by Juel R. Qualls and wife, Carrie Qualls, while Leslie E. Bryant and wife, Marjorie D. Bryant, are the owners of the minerals situated in, upon and under Tracts 1913, 1913E–1 and 1913E–3. In an entry of appearance, the Bryants alleged such ownership, and stated that the action by the plaintiff "amounts to a fee simple taking of the said minerals for the reason that the defendants will be wholly unable to mine, explore or produce valuable coal deposits underlying their lands by reason of the taking."

The estate taken in all of the tracts is defined by the quotations from the declaration of taking heretofore set forth under Civil No. 1640.

On April 11, 1962, the court appointed Commissioners under Rule 71A, Fed.R. Civ.P., in Civil Nos. 1640 and 1641, and on May 4, 1962, Commissioners were appointed in Civil No. 1651, for the reasons set forth in United States v. 561.14 Acres of Land, More or Less, in Johnson and Logan Counties, Arkansas, and Thomas v. Jones, et al. (W.D.Ark.1962), 203 F. Supp. 673, 677–680.

Rule 71A(a), Fed.R.Civ.P., provides:

"The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule."

Rule 1 provides:

"* * * They shall be construed to secure the just, speedy, and inexpensive determination of every action."

The only issue to be tried in these cases is that of determining just compensation to be paid to the landowners for the estate and interest taken from them by the plaintiff.

The principal use of the majority of the tracts in the project is for agricultural purposes. However, many of the tracts are underlaid by coal and natural gas. Some mining of coal is being done in certain areas of the project, and it is thought by some persons that most of the area is underlaid by coal.

■ The only unusual question presented in any of the tracts in the instant cases is that which is presented by Leslie E. Bryant and wife, who claim to be the owners in fee simple of the minerals underlying Tracts 1913, 1913E–1 and 1913E–3. They are claiming that the extent of the taking of those tracts is tantamount to the taking of the minerals for the reason that they will be unable to explore and mine the minerals under the provisions of the declaration of taking. In all of the tracts just compensation will include severance damage if the evidence establishes that the landowner has suffered severance damage to other land owned by him.

The questions raised by the motions and the interrogatories are very similar to the ones that were before the District Court, Middle District of Georgia, in the case of United States v. Certain Acres of Land in Decatur and Seminole Counties, Georgia, and J. R. Sealy, et al. (D.C. 1955), 18 F.R.D. 98. In that case the landowner, under Rule 34 of the Federal Rules of Civil Procedure, had filed his motion for an order requiring the condemnor to produce and permit condemnee to inspect and copy the appraisal reports made by the appraisers. Upon the first hearing on the motion, the court on February 14, 1955, denied the motion, apparently on the ground that there was no showing of good cause for the production, inspection and copying of the documents.

The landowner also filed under Rule 33 thirty-five interrogatories, seeking detailed information as to the appraisals of the property by the plaintiff's expert appraisers.

The condemnor moved to quash the interrogatories on the ground that the information sought was of a privileged nature and character, and that it should not be required to disclose the information because it constituted opinions formed by its retained experts. The motion to quash was sustained. Following the entry of those two orders, the landowner proceeded under Rule 26 by way of cross examination to take the deposition of one of the plaintiff's experts. The taking of the deposition proceeded to a certain point when objections were made, and the taking of the testimony was suspended. The condemnor filed its motion to prevent the landowner from proceeding with the taking of the deposition. The questions to which objections were made by the condemnor were the following:

"* * * What was the value of the naked land? What was the entire value? What was the total valuation you placed on this tract? What valuation did you place on the gravel and where was it located? How much gravel was there? What improvements did you eliminate on your second report? Did your appraisals of April, 1952 and of September 1954 reflect a difference of something over $23,000, (by reason of return to condemnee of 27.19 acres)? How does Irvine's report compare to yours? How many comparable sales did you take into consideration? What land did you inspect to see if it was comparable to this Sealy property? Did you go on

some land that was sold by Cummings to Sheffield? Will you state the grantee and grantor in the earliest comparable sale you considered? What were the soil classifications that you had in making your soil classification? Did you take into consideration the fact that this property was being used as a hunting preserve? Did you place any special value upon the springs located upon that property?"

Judge Bootle, at page 100 of 18 F.R.D., said:

"The question for decision boils down basically to the extent of discovery which will be ordered or permitted from an adverse party's experts. This question is dealt with exhaustively in Moore's Federal Practice, vol. 4, Par. 26.24, where the authorities are collected and analyzed. To review here all of these authorities would extend this memorandum unduly. While there is some conflict among the decisions, it appears that the majority of them support the plaintiff's contentions."

After stating the question, the court proceeded to discuss the applicable decisions upon which the court relied in reaching its conclusion. It seems unnecessary to paraphrase the opinion of the court or to discuss the decisions cited by the court in reaching its conclusion.

Also, in the proceeding the landowner had asked for a reconsideration of the order of February 14, 1955, in which the court overruled the motion of the landowner to require the condemnor to produce and permit condemnee to inspect and copy appraisal reports and other documents, and in the concluding paragraph of the opinion, beginning at page 101 of 18 F.R.D., the court said:

"The orders of February 14, 1955 denying production of documents and quashing interrogatories are left unchanged, the property owner in his briefs having asked for a reconsideration thereof, and the plaintiff's request for a protective order is hereby granted as prayed. The deposition of the witness, O. K. Griffith, shall not be pursued further insofar as the same might relate to the appraisals made by the plaintiff's expert appraisers or to the reports prepared following the appraisals, or to the contents of such reports."

Rule 33 dealing with interrogatories and Rule 34 with discovery and production of documents should be construed liberally. But the mere fact that interrogatories are submitted for answer and a motion for production of documents is served and filed does not determine whether the interrogatories should be answered or the documents should be presented for inspection and copying. It depends upon the information sought to be discovered. In the instant case the landowners are seeking to obtain in most instances information which is available to them, and they are not entitled to obtain in advance of a trial the opinion of the condemnor's expert appraisers, nor are they entitled to see and copy the appraisal reports. In fact, there is nothing to distinguish these cases from the ordinary condemnation case. The burden of proof is upon the defendant landowners to establish the market value of the land on the date it was acquired by the condemnor. Many factors enter into what may be considered and are admissible in evidence to establish just compensation, not only for the estate taken but for severance damage if any has occurred by reason of the taking.

For cases refusing to permit discovery of an expert's opinion and holding that public policy would seem to compel the extension of the privilege rule to situations such as are presented here, see 28 F.R.D. 101.

The cases cited and referred to by the District Court of the Middle District of Georgia, 18 F.R.D. 98, heretofore refer-

red to, deal squarely with the issue before the court, and the reasons set forth in the opinion of Judge Bootle are convincing that the motions of the landowners should be denied and that the objections to the propounded interrogatories should be sustained. In addition to the cases cited by Judge Bootle, see United States v. Certain Parcels of Land in City and County of San Francisco, State of California, Heirs and Devisees of Violette M. Lee, Deceased, et al. (N.D.Cal.1959), 25 F.R.D. 192.

The defendants contend that good cause has been shown for the production of the reports of the appraisers. The only cause shown is reflected by an affidavit of the landowners in support of the motion for the production, inspection and copying of the documents. In the affidavit the landowners state that prior to the time of the taking of the lands various representatives of the Government, describing themselves as appraisers, visited and viewed the lands for the announced purpose of making an appraisal for the benefit of the Government; that in each instance the person describing himself as an appraiser indicated to the landowner that the lands were of a greater value than the amount deposited by the Government at the time of the taking. They then submit interrogatory No. 10 which requests that the plaintiff condemnor "state the name, address and job title of the person who determined or fixed the amount of deposit to be deposited by the United States of America upon the taking of the land * * *."

■ The amount deposited by the plaintiff as estimated just compensation, in accordance with 40 U.S.C.A. § 258a, is immaterial and is not a statement of the maximum or the minimum amount of just compensation that should be recovered by the landowner. See, United States v. Certain Parcels of Land in Prince George's County (D.C.Md.1941), 40 F. Supp. 436, 442; United States v. 9.94

Acres of Land in the City of Charleston, et al. (D.C.E.D.S.C.1943), 51 F.Supp. 478, 481; Garrow et al. v. United States (5 Cir. 1942), 131 F.2d 724, 726; United States v. Miller et al. (1943), 317 U.S. 369, 380, 381, 63 S.Ct. 276, 87 L.Ed. 336.

The defendants have cited and rely upon the opinion of this court in Durkin v. Pet Milk Company (W.D.Ark.1953), 14 F.R.D. 385. The court is entirely familiar with the facts in the Durkin case and with the action taken by the court on the facts, but the decision is not an authority which entitles the court, in view of the facts in the instant case, to require the Government to answer the propounded interrogatories or to produce the documents listed in the motion.

The defendants also rely upon the case of United States v. 50.34 Acres of Land, More or Less, in Village of East Hills, Nassau County, N. Y. (E.D.N.Y.1952), 13 F.R.D. 19. The court in view of the extraordinary facts in that case allowed the landowner to inspect and copy appraisal reports, but the holding in that case is not an authority for the granting of the motions of the landowners or for requiring the answers to the interrogatories under the facts disclosed by the record in the instant cases.

■ The court has heretofore stated that the discovery rules should be liberally construed in the interest of justice, but in a condemnation case, such as the ones that are now under consideration, the court should keep in mind the provisions of Rule 1, Fed.R.Civ.P., heretofore quoted, and the statement in Hartman Corp. of America v. United States (8 Cir., 1962), 304 F.2d 429, where Judge Sanborn, speaking for the court said:

"After all, practical common sense need not be entirely divorced from bankruptcy proceedings."

■ In the instant cases the issue is the simple one of what is just compensation on the date of the taking of the

estate acquired by the Government. The landowners in their brief in opposition to the objections of the Government state: "The lands, by and large, are rural, agricultural lands and the character of the lands changes considerably with the advent and departure of the cultivating seasons. Whether the lands were viewed during the productive season or during the winter months of nonproduction and whether the lands were viewed one day, one month or one year or more before the actual taking are questions of fact which are essential to determination of the case."

As heretofore stated, the landowners are entitled to recover the market value of the estates taken as of the date of the taking. The defendants are the owners of the lands. They and their neighbors are entirely familiar with the lands and are and will be able to testify as to the location, means of ingress and egress, kind and value of improvements which enhance the value of the lands, availability of utilities such as telephone, electricity and gas, the state of the highways, rural mail routes, location of churches, schools, the fertility and productiveness of the lands, and the highest uses to which the land may be put by an owner, along with any other facts which a prospective buyer would be apt to consider in determining the market value.

During the last 20 years thousands of tracts of land have been acquired by the Government through the court for the Western District of Arkansas.[1] This is the first instance in which a landowner has filed interrogatories or has sought to obtain appraisal reports. In practically every controversy between the Government and the landowner as to just compensation, both sides have adduced testimony to establish any and all facts which might be relevant in ascertaining just compensation. Almost without exception, a witness testifying to such facts concludes his testimony by stating his opinion as to the market value, and in that manner justice is done to the Government and to the landowner. It would be an innovation and greatly prolong the trial at the expense of the parties were the court to fail to sustain the objections of the plaintiff to the interrogatories and to the motion for production of documents. In fact, as suggested by Judge Sanborn, such a holding would entirely divorce practical common sense from the trial and lead to rank injustice to either the Government or the landowner.

Therefore the court in the exercise of its discretion (Jayson v. United States, 5 Cir. 1961, 294 F.2d 808, 811) feels that justice requires that the objections to the interrogatories and to the motions for production, inspection and copying of documents should be sustained, and an order in accordance herewith is being entered today.

1. Such projects are the Norfolk Dam and Reservoir, the Bull Shoals Dam and Reservoir, the Blakely Mountain Dam and Reservoir on the Ouachita River, the Narrows Dam and Reservoir, a considerable portion of the Table Rock Dam and Reservoir, the Beaver Dam and Reservoir (not yet completed), Nimrod Dam and Reservoir, Blue Mountain Dam and Reservoir, Camp (now Fort) Chaffee, the Naval Ordnance Project at Camden, Arkansas, the U. S. Chemical Plant at El Dorado, Arkansas, and Dardanelle Dam and Reservoir (not yet completed). Pending are the Sulphur River Project in southwest Arkansas, the Millwood Dam and Reservoir Project on Little River in southwest Arkansas, the DeGray Dam and Reservoir Project on the Caddo River in central Arkansas, and the Arbuckle Island Project in the Arkansas River near Fort Smith. These projects do not include the various condemnations necessary in carrying out the Bank Stabilization Program on the Arkansas River, nor the acquisition of lands in the Ozark and Ouachita National Forests, both of which are situated in the Western District of Arkansas.