George L. MORGAN, Jr., and Geraldine Morgan, Appellants,

v.

UNITED STATES of America, Appellee.

No. 18099.

United States Court of Appeals Eighth Circuit.

Feb. 7, 1966.

H. Clay Robinson, Fort Smith, Ark., for appellants.

Roger P. Marquis, Department of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Department of Justice, Washington, D. C., and Charles M. Conway, U. S. Atty., Fort Smith, and Max E. Findley, Sp. Asst. to U. S. Atty., Fort Smith, Ark., Roger P. Marquis, Washington, D. C., on the brief, for appellee.

Before VOGEL, Chief Judge, and BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

We are concerned here with a condemnation commission appointed under Rule 71A(h), Fed.R.Civ.P., and the effect of the Supreme Court's unanimous opinion in United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964).

In May 1962 the United States instituted proceedings for the taking of additional lands for the Dardanelle Lock and Dam Project on the Arkansas River.

Included were a fee interest in 270.47 acres and perpetual flowage easements over 15 other acres, all in Johnson County, Arkansas, and owned by the appellants George L. Morgan, Jr., and his wife Geraldine. Before the taking the Morgan property consisted of 487 acres; it had been operated as a cattle farm.[1]

The day following the filing of the complaint the district court, pursuant to Rule 71A(h), appointed a commission. This was the same commission the court had utilized in connection with prior takings for the Dardanelle project. The commission's chairman was a lawyer. Morgan filed an answer and joined the government in demanding a jury trial. This request for a jury was denied.[2] The commission held a hearing in due course and filed its report on October 21, 1963. It fixed compensation for the Morgans at $27,500. The Morgans filed exceptions and objections. These were overruled by Judge Henley. Judgment was entered in line with the commission's report. The Morgans appeal.

Because United States v. Merz, supra, is the center of the controversy here, we carefully examine that decision. It covered two appeals. In one case the district court apparently had issued no instructions. Its commission filed a report listing each tract and the compensation for it. When the government objected, this was supplemented with a description of the easements taken, of the highest and best use, of stated conclusions, and of rulings on evidence. The district court adopted the report; the Tenth Circuit affirmed. United States v. Merz, 306 F.2d 39 (10 Cir. 1962).

In the other case, the district court had instructed its commission as to standards of just compensation, the weight which could be given opinion evidence, burden of proof, conduct of the hearing, and the propriety of a view. The commission had been directed to file

1. United States v. 900.57 Acres of Land, 30 F.R.D. 512 (W.D.Ark.1962), concerned an early aspect of this condemnation.

2. As in Merz, see footnote 2, p. 194 of 376 U.S., p. 641 of 84 S.Ct., the question as to the parties' right to a jury trial notwithstanding Rule 71A(h) was not preserved and is not before us.

a written report with separate findings and conclusions. A report for each landowner was filed. These reports contained a summary of the evidence and findings and conclusions. One referred to a ruling on evidence. Each allowed compensation apparently in excess of testimony figures. Severance damages were awarded without indication as to basis. Here, too, the district court adopted the reports but the Fifth Circuit remanded. United States v. 2,872.88 Acres of Land, 310 F.2d 775 (5 Cir. 1962).

The Supreme Court sent both cases back for further proceedings. It first drew the appropriate contrast between a jury and a commission, saying, pp. 197–198 of 376 U.S., p. 642 of 84 S.Ct.:

> "[T]here is danger that commissioners, unlike juries, may use their own expertise and not act as a deliberative body applying constitutional standards. * * * The jury is under surveillance from start to finish and subject to judicial control. Hence its general verdict that the land is worth so many dollars is not overturned for lack of particularized findings.

> "The judge who uses commissioners, however, establishes a tribunal that may become free-wheeling, taking the law from itself, unless subject to close supervision."

Mr. Justice Douglas then, as we read his opinion, went on to set up a number of guidelines for a court and commission functioning under Rule 71A(h):

1. "[C]areful instruction * * * on the law", p. 198 of 376 U.S., p. 643 of 84 S.Ct. This concerns (a) the qualifications of expert witnesses; (b) the weight to be given other opinion evidence; (c) competent evidence of value; (d) best evidence of value; and (e) examples of severance damages.

2. Instruction as to the manner and conduct of the hearing. This covers (a) the right to view; (b) the limited purpose of viewing; (c) the kind of evidence that is inadmissible; and (d) the manner of ruling on it.

3. Instruction as to the report to be filed. This concerns (a) the kind of findings to be included; (b) the insufficiency of conclusory findings alone; (c) revelation of the reasoning used in deciding on a particular award; (d) the standard followed; (e) the line of testimony adopted; and (f) the measure of severance damages.

4. Responsibility on the part of the litigants "to assist the process by specifying their objections to instructions, by offering alternate ones, and by making their timely objections to the report in specific, rather than in generalized form", p. 199 of 376 U.S., p. 643 of 84 S.Ct.

The Court also pointed out what was not necessary. It observed that (a) "The commissioners need not make detailed findings such as judges do who try a case without a jury"; (b) every contested issue need not be resolved by a separate finding of fact; and (c) there need not be "an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based." The Court assumed that commissioners "will normally be laymen, inexperienced in the law", but it felt that its requirement as to marking distinctly the commissioners' path was within the competence of laymen and that laymen "will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it." It stated that if these procedures are followed, a court of appeals will have guidelines to help it determine whether the report is "clearly erroneous" within the meaning of Rule 53(e) (2). Pp. 198–199 of 376 U.S., p. 643 of 84 S.Ct.

On this appeal the Morgans assert only that the commission's findings do not meet the standards of *Merz* and that the district court's instructions were insufficient. All other claims of error are abandoned. It is said that the report contains only conclusory findings, without indication of reasoning process; that it fails to reveal the use made of testimony, duly objected to, by the witness

Jordan with respect to special benefits; that it fails to explain what use is made of witness Raley's testimony which should be given reduced weight because it embraced no independent appraisal; that witness Jackson did not correctly break down his remainder value; that the instructions are meager and insufficient; and that the government appraisers' figures are about 25% low.

Judge Henley, in response to objections presented in the district court, observed:

"In light of United States v. Merz, 376 U.S. 192 [84 S.Ct. 639, 11 L.Ed. 2d 629], one might well question the technical sufficiency of the Report. However, the Report is sufficient in general to enable the Court to determine what the Commission thought about the principal contested issues and the lines of testimony the Commissioners believed. In particular the Report is sufficient to enable the Court, with some help from the evidentiary material in the file, to pass upon the specific Exceptions and Objections of the landowner, all of which are without substantial merit.

&ast; &ast; &ast; &ast; &ast; &ast;

"Upon the entire record I cannot say that the Report is clearly erroneous even though I might have disagreed by a very few thousands of dollars with the result."

In related proceedings, like comments were made by Chief Judge Miller in response to contentions that this same report was inadequate. United States v. 599.86 Acres of Land, 240 F.Supp. 563, 573–574 (W.D.Ark.1965). A similar observation also appears in United States v. 339.77 Acres of Land, 240 F.Supp. 545, 550 (W.D.Ark.1965).

Because of the insufficiency of the printed record, we have obtained and reviewed the district court's instructions to the commission. These consist of eleven pages, exclusive of addenda not pertinent here. They were compiled by Judge Miller.

After preliminary and general comments, the instructions place the burden of proof on the landowner; define preponderance of the evidence, just compensation, and fair and reasonable market value; relate compensation "to any and all uses to which [the property] might have been available at the time of the taking"; measure compensation "upon the most advantageous uses to which [the property] might be subjected"; state that all pertinent "elements of value" should be taken into consideration, and define such elements; exclude elements "not fairly shown to be reasonably probable"; direct the making of an award for each tract of land as a whole; prohibit consideration of the adaptability of the land for the purpose for which it is condemned; define severance damage; direct that for improved properties the award shall be based on values as a whole; refer to the possibility of mineral deposits and how, if they exist, they are to be taken into consideration; mention the need for apportionment where ownership between land and minerals is divided or where there is an outstanding leasehold; and the manner of effecting such apportionment; define an easement; and define just compensation when an easement is taken.

The instructions then concern themselves with evidence. They state that evidence of a mere offer to sell or to purchase is not admissible; that evidence of a sale of a comparable property is admissible and should be given "the weight that you think it should have in determining the fair and reasonable market value of the lands in question"; that, as to such a sale, consideration should be given to comparative location, accessibility, quality, and the like; that evidence as to productivity should be considered only so far as it sheds light upon the market value of the land itself; that other factors, such as weather, efficiency of management, market conditions, and available acreage allotments, also affect productivity; that an owner's claim that the taking has damaged his business or that he has been damaged by being re-

quired to move does not afford a proper measure of compensation; that one reason commissioners were appointed was that the court felt the properties should be viewed; that it is expected the commission will view; that this, however, does not entitle the commission to disregard the evidence and determine compensation upon its own knowledge; and that it is not to be concerned with the value of the property as it exists when the view is taken but, instead, with its value when it was condemned.

The instructions then relate to the commission's conduct of its hearings. They speak of reasonable notice to parties and counsel; the fixing of a convenient place for the hearing; the order of hearing witnesses; the commission's discretion as to whether it desires oral argument; procedure in the event a landowner prosecutes his own claim and is not represented by an attorney; the assignment of a court reporter; and the furnishing, if desired, of a transcript.

The court concludes with the direction that after the hearing has been completed a report should be filed showing the awards made. It states that "such report should disclose your basic findings and such evidentiary findings and comment as you may consider necessary or desirable. The Court has a right to call upon you, if necessary, to amplify such reports as you may file". It then refers to payment for the commissioners' services and reimbursement for expenses incurred. It instructs the commission to avoid discussion of the case with anyone, and to feel free to call upon the court for any further instructions needed.

The commission's report is before us. It is of some length. It recites that the commission viewed "this entire ownership * * * in the company of the owner and the attorneys for both parties". It then outlines the testimony cf Mr. Morgan as owner. It sets forth his description of the property and its improvements; his estimate of the values of those improvements; his assertion that the highest and best use for the

farm was "to use the bottom land for row crops and to run cattle on the upland"; his estimate of the full value ($87,825), of the remainder after the taking ($34,000), and of the difference ($53,525); his original cost ($19,500); the amounts he expended for improvements ($15,000); his sales, since the taking, of 130.31 acres on the east side for $17,800, and of 64 acres on the northwest corner; his continued retention of 23.29 acres adjacent to a golf course; and his not owning the minerals.

The report goes on to describe the testimony of the three other witnesses produced by Morgan and that of the three presented by the government:

1. Morgan's witness McGuire, who had been appraising for 18 years, testified as to the number of tillable acres; the value of the improvements; the values of the respective acres; and total values before and after the taking. He produced a difference of $51,700.

2. Morgan's witness Hunt, a neighboring farmer, testified as to before and after values. He offered a difference of $53,475.

3. Morgan's witness Hurley, president of a bank in nearby Clarksville, testified as to before and after values and produced a difference of $45,000.

4. Government witness Jackson of DeQueen, Arkansas, an appraiser for the Corps of Engineers and engaged in real estate appraisals for seven years, regarded the upland as average grassland and some of the lower land as gumbo and stated that the highest and best use of the property was as a livestock operation and that the highest and best use for the remainder was as a livestock operation and a rural homesite. He valued the respective acreage and the improvements; gave before and after values; and came out with a remainder of $25,000.

5. Government witness Jordan, a real estate broker of Russellville, testified as to before and after values, reduced by the minerals under the lands taken, and had a difference of $20,605.

6. Government witness Raley, reviewing appraiser for the Corps of Engineers, testified that the highest and best use for the entire ownership was a livestock operation and of the remainder was a subsistence grazing property; stated before and after values; and produced a difference of $25,000.

The report also outlines the testimony of a hydrologist for the Corps of Engineers as to the normal power pool level and as to flood frequencies at specified elevations; the testimony of a member of the Soil Conservation Service in Clarksville as to various soil classifications on the property and the varying need for conservation practices; the government's exhibits, consisting of an aerial photograph of the land, a tract map, and photographs of the improvements; and the soil conservation map introduced by the Morgans.

The report refers to "considerable cross-examination of all witnesses by opposing counsel" and the making of procedural motions. It seeks to justify the relevancy of the testimony given by the respective witnesses; notes that objections expressed by the parties went primarily to weight, rather than to admissibility; and concludes that weight was a matter for the commission under the instructions of the court. It refers to testimony as to occasional floods; the existence of a levee; Morgan's work in subsoiling and in the construction of drainage ditches; the absence of testimony as "to any very successful crop operations"; the landlocked feature of the northern remainder; the arm's length character of the sales; and the inaccessibility of the 23.29 acreage except through the golf course. It states:

> "[W]e think the Government appraisers' figures are low, perhaps, due to increases in the market values since the sales upon which the studies were based. By the same token, we think it apparent that the landowner's witnesses have been considerably more than liberal in their evaluations."

It then finds that the fair market value of the entire ownership as of the date of taking was $53,000; that the fair market value of the remainders as of that date was $25,500; and that just compensation was the $27,500 difference. The compensation figure thus does not coincide with the figure submitted by any witness, but it is exactly 10% greater than that arrived at by government witnesses Jackson and Raley.

We have also reviewed the transcript of the testimony taken by the commission. We find no factual discrepancy between the testimony and the commission's description of it in its report. We note the following additional items: Morgan testified that 270 acres of his farm were in the creek bottom "and the rest is rolling"; that his costs for improvement "do not include my own labor or depreciation of the equipment"; that the "improvements enhance the value of the real estate by three or four times the amount of my out-of-pocket expense"; and that he sold the remainders because he "needed the money to put in on another farm across town". Mr. McGuire testified that "The taking is of the bottom land, it has taken the complete heart out of it. The remainder is not suitable for the highest and best use of cattle or general farming because there is not enough acres"; that the acreage next to the golf course, because of its inaccessibility, could not be used for anything; that there were no comparable sales; that he knew in a general way what the soil was but did not take samples; and that this would be an important factor if one was going to purchase a farm. Mr. Jackson testified as to what he felt were three comparable sales in 1960–62.

We recognize that, with the commission appointed, the instructions delivered, the hearing held, and the report formulated and filed, all well before the Supreme Court's decision in *Merz* in February 1964, the "clean slate" standards of that case could not possibly have been anticipated in every detail. The government so concedes. It also concedes, from

its own point of view, the existence of deficiences in the report.

We, however, read *Merz* as requiring not meticulous compliance with every particular therein mentioned, but as suggesting standards which assure fairness to both condemnor and condemnee and provide safeguards against a commission's natural tendency, when not controlled, to use its own assumed expertise.

Upon this approach, we agree with Judge Henley that the subsequently enunciated requirements of *Merz* were sufficiently met by both the court and this prior appointed and acting commission and that this case need not be remanded.

The instructions, although perhaps not covering every detail suggested by Mr. Justice Douglas, do comprehensively present to the commission its duties and its method of operation. They cover burden of proof, competent evidence, unacceptable evidence, and severance damage and in some respects actually go further in detail as to evidence than the *Merz* suggestions. They relate to the manner and conduct of the hearing, the right to view, the restrictions in viewing, the order of witnesses, the possibility of oral argument, a reporter, and a transcript. Finally, they speak of the report to be filed, and require evidentiary findings and comment, as well as basic findings. Viewed in their entirety, we feel that the instructions come remarkably close to the details enunciated by Mr. Justice Douglas, are more acceptable than those considered in the two cases on appeal in *Merz,* and meet the fairness and restrictive standards of that opinion.

Further, we feel that, if the court's instructions were deficient in any respect, the ensuing commission hearing was fairly and objectively conducted anyway and that the report which was filed adequately and informatively discloses the path which the commission followed in arriving at its award. After all, this path is the desired goal of careful and appropriate instructions and of the report requirement. The need for knowledge as to the path was stressed in *Merz,* p. 199 of 376 U.S., 84 S.Ct. 639, and was recognized in United States v. Certain Lands in the City of Statesboro, 341 F.2d 742, 744 (5 Cir. 1965). The present report referred to a view made only in the presence of opposing counsel, It carefully indicated and outlined the testimony of every witness, per acre valuations, before and after valuations, improvements, use, severance details, exhibits, the presence of detailed cross-examination, procedural motions, an awareness of the distinction between the admissibility and the weight of evidence, flood possibilities and flood protection, obvious lack of enthusiasm for the testimony of the Morgan witnesses, and, except for the 10% upward adjustment attributed to general market increases since the stated sales, an acceptance of the testimony of government witnesses Jackson and Raley. All this constitutes, to our satisfaction, a clear path of appropriate evaluation of evidence presented and not of evidence self-assumed, a pattern of intelligent weighing of the testimony, an acceptable compliance with procedural requirements, and the rendition of reliable judgment. We do not say that this pre-*Merz* case is necessarily a model for future commission procedure. We say only that it sufficiently meets the requirements of *Merz* and enables us easily to conclude that the report was not "clearly erroneous" within the meaning of Rule 53(e) (2).

Lastly, and perhaps most persuasive of all, is the failure of the appellants themselves to fulfill the responsibility, imposed upon them by *Merz,* for specifying objections to instructions, offering alternate ones, and making objections to the report in precise and specific, rather than in generalized form. There were no really timely objections made to the instructions for this record discloses the presentation of none at all until after the commission had already filed its report. The objections which were then made to the instructions and to the re-

port were lacking in specificity. They attack primarily the weight of the evidence and yet concede that the testimony of the Morgan witnesses is susceptible to like attack. *Merz* flatly requires specific objections, p. 199 of 376 U.S., 84 S.Ct. 639, and favorably cites Sheffield & Birmingham Coal, Iron & Ry. Co. v. Gordon, 151 U.S. 285, 290–291, 14 S.Ct. 343, 38 L.Ed. 164 (1894). On this ground alone we have no alternative than to affirm.

The judgment of the district court is affirmed.