UNITED STATES of America,
Appellant,

v.

452.876 ACRES OF LAND, MORE OR LESS, IN the CITY OF VIRGINIA BEACH, COMMONWEALTH OF VIRGINIA, C. L. Pincus, Jr., Westinghouse Credit Corp., Sea Bay Development Corp., Appellees.

No. 81–1224.

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 2, 1981.

Decided Dec. 23, 1981.

Robert D. Clark, Dept. of Justice, Washington, D. C. (Carol E. Dinkins, Asst. Atty. Gen., Washington, D. C., Justin W. Williams, U. S. Atty., Michael A. Rhine, Asst. U. S. Atty., Norfolk, Va., Dirk D. Snel, Dept. of Justice, Washington, D. C., on brief), for appellant.

A. Joseph Canada, Jr., Virginia Beach, Va., for appellee.

Before MURNAGHAN, SPROUSE and ERVIN, Circuit Judges.

MURNAGHAN, Circuit Judge:

The federal government condemned a perpetual restrictive use and clearance easement over two parcels, one of 126 acres, the other of 2 acres. The property subjected to the easement is located in Virginia Beach, Virginia, and the easement was acquired for purposes of the Oceana Naval Air Station.

The matter was referred, pursuant to Fed.R.Civ.P. 71A, to a commission of three persons appointed by the district court. The commission, as provided in Rule 71A(h), had the powers of a master spelled out in Fed.R.Civ.P. 53(c). Rule 71A(h) states that the commission's

> action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53.

Rule 53(e)(2) calls for findings of fact to be accepted and upheld unless "clearly erroneous."

*United States v. Merz,* 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964) provides a

primer to be followed in matters of this kind. *Merz* points out that while "use of a commission to resolve the issue of just compensation is justified by the facility with which commissioners may inspect the property and a likelihood that uniformity of awards may be realized expeditiously," nevertheless, "there is danger that commissioners, unlike juries, may use their own expertise and not act as a deliberative body applying constitutional standards."[1] Unlike a jury, the commission does not operate under the direct supervision of a judge "who polices the entire hearing, keeping it within bounds."[2]

◼ The Supreme Court recognized that when a district judge uses a commission he must subject it to close supervision to prevent its becoming a free-wheeling body, taking the law from itself. Among other things, the commissioners must be instructed as to the kind of report to be filed:

Conclusory findings are alone not sufficient, for the commission's findings shall be accepted by the court "unless clearly erroneous"; and conclusory findings as made in these cases are normally not reviewable by that standard, even when the District Court reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence.[3]

◼ While commissioners, not being trained in the law, need not make detailed findings such as judges do who try a case without a jury, still they can and should be instructed "to reveal the reasoning they use in deciding on a particular award, what standard they try to follow, which line of testimony they adopt, what measure of severance damages they use, and so on."[4]

The Supreme Court does not require "an array of findings of subsidiary facts."

"The path followed by the commissioners in reaching the amount of the award can, however, be distinctly marked. Such a requirement is within the competence of laymen; and laymen, like judges, will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it."[5]

The Court concluded with respect to the reports of commissioners before it in *Merz* that they left "much to be desired, measured by the standards we have suggested." The Court concluded that the district court should have required more before adopting any of the reports and remanded with instructions to the district court to use its informed discretion "to determine whether the matter should be resubmitted in whole or in part to the respective commissioners or whether, in light of the exigencies of the particular case, the court should itself resolve the disputes on the existing records or on those records as supplemented by further evidence."

◼ With the guidance supplied by *Merz*, we turn to what happened here. We conclude that the reports of the commissioners left much to be desired, measured by the standards laid down in *Merz*. Appraisers for the government testified to composite aggregate valuations for both properties of $66,650 according to one appraiser and $97,-500 in the case of the other. The figures put forward by appraisers for the landowner were $4,805,300[6] and $4,486,154.[7]

There were two reports submitted, one covering 126 acres, the other covering 2 acres. The report with respect to the former read in its entirety:

Your Commissioners report as follows:

1. The property right taken is a perpetual easement over the property.

---

1. *Merz, supra,* at 197, 84 S.Ct. at 642.

2. *Id.*

3. *Id.* at 198, 84 S.Ct. at 643.

4. *Id.* at 198, 84 S.Ct. at 643.

5. *Id.* at 199, 84 S.Ct. at 643.

6. The composite appraisal of Winters and Sears.

7. Such was the testimony of Ripley. The government's attorney in cross-examination characterized it rather loosely as some $3,500,-000.

2. The fair market value of the property right taken is $610,000.00. The value of the property before the taking was rounded to $4,600,000.00. The value after the taking was rounded to $3,990,000.00.

3. There is no finding of damage to the residue of the property.

4. The highest and best use of the property taken is for a camp ground, after the easement.

5. Since air rights over the property had been taken previously, no finding is made in this category.

> Respectfully submitted,
> /s/ _____
> J. W. Buffington
> /s/ _____
> E. S. Everhart
> /s/ _____
> P. B. White

August 8, 1980 [8]

The district judge in terse orders confirmed the reports of the commission. With respect to the larger parcel, the order read in its entirety:

### ORDER

The report filed by the Commission appointed herein clearly sets forth the property right taken was a perpetual easement of air rights; that the value of the property before the taking, involving 125.981 acres, was rounded to $4,600,-000.00; that the value of the land after taking was rounded to $3,990,000.00, and that the fair market value of the property right taken is $610,000.00.

8. The other report was couched in similar language, the changes being:

A. In paragraph 2 the insertion of "$13,-682.00" in lieu of "$610,000.00"; of "$8,000.00 per acre, or a total of $16,840.00" for "rounded to $4,600,000.00"; and the substitution of "is $1,500.00 per acre, or a total of $3,158.00" for "was rounded to $3,990,000.00"; and

B. In paragraph 4, the insertion of "a horse farm" in lieu of "a camp ground, after the easement."

9. The order with respect to the 2 acre parcel used identical language, except those changes corresponding to the changes as they existed in the reports of the commissioners.

The Commissioners further found and reported that the highest and best use of the property is for a camp ground, after the taking.

The Commissioners commented that they accepted the evidence before them; that the property was worth $4,600,000.00 before the taking and accepted the evidence offered that the value after the taking was rounded to $3,990,000.00.

In the judgment of the Court the report of the Commissioners filed August 22, 1980 meets the requirements of law. Exceptions filed by both parties are DENIED.

The report of the Commissioners is CONFIRMED.

> /s/ J.A. MacKenzie
> United States District Judge

Norfolk, Virginia

Date: Oct. 27, 1980 [9]

It is all too evident that the text of the commission reports is so bare and sparse as to provide no basis for developing whether they are or are not clearly erroneous. The landowner asserts that the reports and the orders thereon may be affirmed since there need not be "meticulous compliance with every particular therein (i.e., in *Merz*) mentioned," citing *Morgan v. United States*, 356 F.2d 17 (8th Cir. 1966, Blackmun, J.). But here we deal with reports lacking in almost every significant particular by which the status as correct or as clearly erroneous can be judged.[10]

Another flimsy reason advanced to sustain the reports and the orders thereon is

10. In *Morgan*, by contrast:

the report which was filed adequately and informatively discloses the path which the commission followed in arriving at its award. . . . The present report referred to a view made only in the presence of opposing counsel. It carefully indicated and outlined the testimony of every witness, per acre valuations, before and after valuations, improvements, use, severance details, exhibits, the presence of detailed cross-examination, procedural motions, an awareness of the distinction between the admissibility and the weight of evidence, flood possibilities and flood protection, obvious lack of enthusiasm for the testimony of the Morgan witnesses, and, ex-

the fact that the condemnation values "were within the range of testimony as to severance damages adduced before the commission." The quoted language is from *United States v. Certain Parcels of Land Located in Fairfax and Loudoun Counties, Commonwealth of Virginia*, 384 F.2d 677 (4th Cir. 1967). However, the unelucidated figure that falls within the highest appraisal advanced by the landowner and the lowest advanced by the government is here nothing more than an unexplained result. The mere falling between those extreme limits does nothing to make understandable the process by which the commission arrived at its determinations of values. The report in *United States v. Certain Parcels of Land Located in Fairfax and Loudoun Counties, Commonwealth of Virginia, supra*, was demonstrably more complete and indicative of the path followed by the commission than the barebones conclusory statements in the reports of the commission in the case now before us.[11]

Accordingly, we reverse and remand for further proceedings in the light of the procedure called for in *United States v. Merz, supra*.

REVERSED AND REMANDED.

cept for the 10% upward adjustment attributed to general market increases since the stated sales, an acceptance of the testimony of government witnesses Jackson and Raley. All this constitutes, to our satisfaction, a clear path of appropriate evaluation of evidence presented and not of evidence self-assumed, a pattern of intelligent weighing of the testimony, an acceptable compliance with procedural requirements, and the rendition of reliable judgment.
*Id.* 23.

11. *Id.* at 681:
The report described the appearance of the land, its location, the neighborhood, and the character of its terrain. The quantities of land overall and in the portions north and south of the railroad track, as well as the quantity of land included in the taking, were set forth. The distance of the Sunset Hills tract from metropolitan areas was described,

as well as the availability of, and demand for, large tracts for developmental purposes. The roads and highways abutting and traversing the entire tract were described, as was its zoning and the uses to which the land was put on May 25, 1960....

We conclude, therefore, that there were "distinct markers" to the road by which severance damages of $280,014.32 were reached. Substantially, the only fact not disclosed was the components which, when added together, aggregated that amount. But the total arrived at, although its basis was not fully disclosed, was well within the range of testimony as to severance damages adduced before the commission, and we cannot say, when the commission was dealing with such a substantial tract, having so many subsidiary problems with regard to severance damages, that his (sic) omission renders the report defective.