**WEST, INC., and Mrs. Florence Wetherbee, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 22819.**

United States Court of Appeals
Fifth Circuit.

March 10, 1967.

---

Garner W. Green, Jr., Garner W. Green, Sr., Jackson, Miss., for West, Inc., and Mrs. Florence Wetherbee, appellants. Green, Green & Cheney, Jackson, Miss., of counsel.

E. R. Holmes, Jr., Asst. U. S. Atty., Jackson, Miss., Edwin L. Weisl, Jr., Asst.

Atty. Gen., Roger P. Marquis, Edmund B. Clark, Attys., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for appellee.

Before TUTTLE, Chief Judge, THORNBERRY and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

On June 8, 1964, the United States filed a petition in condemnation to acquire, inter alia, the fee title to the three tracts of land in question, needed in connection with the Yazoo Basin Headwater Project in Mississippi, allegedly for use as a fish and wildlife preserve designed to offset fish and wildlife losses due to the flood control project. (Flood Control Act of 1946, 60 Stat. 608; 77 Stat. 844 (1963); 33 U.S.C. §§ 591, 701, 702a, 702a–1 to 702a–2). The complaint and declaration of taking specified that Tracts 508 and 602, owned by appellant Wetherbee, and Tract 600, owned by appellant West, Inc., were to be taken in fee, reserving the appellants the mineral rights with rights of ingress and egress. Appellants filed an answer contesting the authority to take a fee and seeking dismissal of the complaint and declaration of taking on the ground that only a flowage easement was required for the project. Appellants also sought a writ of prohibition and an order directing that the proceedings be governed by Mississippi law pursuant to the provisions of 33 U.S.C. § 591 and Fed.R.Civ.P. 71A(k). The district court denied the motion to dismiss and struck those portions of the answer contesting the authority to take. Compensation was fixed by stipulation at $14,350.00 for the Wetherbee tracts and by jury at $25,000.00 for the West land, final judgments being entered accordingly, on June 28, 1965 with respect to the Wetherbee tracts, and on July 19, 1965 with respect to the West tract. This appeal followed. We affirm.

### I.

■ The right of the federal government to condemn property within the state for public use has been sanctioned by history and precedent throughout the years albeit purposes and techniques have changed consonant with our fluid society. In the early case of Kohl v. United States, 91 U.S. 367, 371, 23 L.Ed. 449, 451 (1875), the Supreme Court upheld the exercise of Federal power of eminent domain to acquire a prospective site for a post-office in Ohio. In that case, Mr. Justice Strong said:

"It has not been seriously contended during the argument that the United States Government is without power to appropriate lands or other property within the States for its own uses, and to enable it to perform its proper functions. Such an authority is essential to its independent existence and perpetuity. These cannot be preserved if the obstinacy of a private person, or if any other authority, can prevent the acquisition of the means or instruments by which alone governmental functions can be performed. The powers vested by the Constitution in the General Government demand for their exercise the acquisition of lands in all the States * * *. If the right to acquire property for such uses may be made a barren right by the unwillingness of property holders to sell, or by the action of a State prohibiting a sale to the Federal Government, the constitutional grants of power may be rendered nugatory, and the Government is dependent for its practical existence upon the will of a State, or even upon that of a private citizen. This cannot be."

■ Whether and to what extent the United States needs the property for an admittedly constitutional purpose under a valid delegation to select the land needed are legislative rather than judicial questions, to be decided in this case by the Secretary of the Army. The function of the court in this area is a narrow one. Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); United States ex rel. T. V. A. v. Welch, 327 U.S. 546, 66 S.Ct. 715, 90 L.Ed. 843 (1945); Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1892).

In Shoemaker, supra, 147 U.S. at 298, 13 S.Ct. at 390, 37 L.Ed. at 184, a case where condemnation of land for a public park was upheld as a valid public use, the Supreme Court held that

"The adjudicated cases likewise establish the proposition that, while the courts have power to determine whether the use for which private property is authorized by the legislature to be taken is in fact a public use, yet, if this question is decided in the affirmative, the judicial function is exhausted; that the extent to which such property shall be taken for such use rests wholly in the legislative discretion, subject only to the restraint that just compensation must be made."

■■■ Appellants here contend that the taking of a fee interest by the United States was without authority when a flowage easement would have sufficed for the purpose intended. This argument is without merit. Provided that land can be reasonably related to a public purpose, the United States, in eminent domain proceedings, is not limited to taking in fee the amount of property which will be physically occupied by the public or actually submerged in a flood control operation. If Congress wanted to dot every $i$ and cross every $t$ in the pursuit of a legislative command, it would have the power and right to do so; but the courts should only sparingly deny governments an operable orbit to accomplish a legislative end. Numerous cases sustain the proposition that the purpose intended being valid, the necessity of the taking and the character of the title to be taken are decisions vested exclusively in the Secretary. E. g., Berman, supra; Welch, supra; Shoemaker, supra; United States v. Agee, 322 F.2d 139 (6 Cir. 1963). See also In re United States, 257 F.2d 844 (5 Cir. 1958).

The Supreme Court in Berman, supra, 348 U.S. at 36, 75 S.Ct. at 104, 99 L.Ed. at 39, discussing the Agency's right to take full title to property pursuant to a redevelopment project, concluded that if the Secretary considers it necessary in carrying out the project to take fee title to property involved, it may do so. The Court stressed its opinion that it is not for the judiciary to determine what is necessary for successful consummation of a project any more than it is the court's function to select the precise parcels to be condemned. Compare United States v. 6.74 Acres of Land, etc., 148 F.2d 618 (5 Cir. 1945), holding that the lower court was without right to question the Secretary's action either as to the necessity of taking or as to the extent of the interest in the property taken where, while under lease and in possession of property, the United States condemned fee title thereto.

■■■ Flood control embraces many elements, and the fact that a committee of Congress directs that the minimum of land necessary for flood control purposes be taken does not restrict the taking to an easement of flowage. United States v. Meyer, 113 F.2d 387 (7 Cir. 1940). If the flood control operation has some concomitant deleterious effects on the fish and wildlife in the areas involved, the scope of condemnation can include remedies to remove such deleterious effects. In United States v. 91.69 Acres of Land, etc., in Oconee County S.C., 334 F.2d 229, 231 (4 Cir. 1964), a case remarkably similar to the case at bar in that the owners there contested condemnation and endeavored to preserve their fee ownership in beach land which would be incidentally used for recreational purposes, the Fourth Circuit said:

"Ordinarily the Government may take not only the land that will be flooded but such additional land as in the discretion of the condemning authorities may be necessary or desirable to protect the lake or to permit the incidental public use."

■■■ Condemnation of the land involved in the instant case was undisputedly for a valid public use, since it was deemed necessary to the Yazoo River Basin flood control project and for other uses incident thereto. Public use being established, appellants cannot here question the character of the taking, for, barring a showing of arbitrary, capri-

cious, or corrupt subversion of legally delegated authority, the decision as to amount and character is lodged exclusively with the Secretary. Berman, supra, 348 U.S. at 35–36, 75 S.Ct. 98, Agee, supra, 322 F.2d at 142. There are no allegations or even fantastic suggesttions that these elements are present in this case, and, in fact, they are not. It would seem *a fortiori* that no bad faith could be attributed to the Secretary in the case at bar in his attempt to protect the wildlife and fisheries which would be harmed as a result of the flood control operation. Appellants' lengthy argument concerning the authority to take fee title is foreclosed by the court in Meyer, supra, 113 F.2d at 392:

"Defendants insist that a fee simple title was not necessary to accomplish the purposes contemplated by the legislation. But the power to decide whether such a title was needed is, by the legislation, conferred upon the Secretary and, in the absence of bad faith or abuse of discretion, such determination is not subject to judicial review. * * * Determination of the extent, amount or title of property to be taken, by an Administrative Department, is, in the absence of bad faith, final. * * * The decision as to such questions rests wholly in legislative discretion, subject only to the restraints that just compensation must be paid and the determination made in good faith."

## II.

Appellants herein zealously contend that the procedural requirements of the State of Mississippi should be adhered to in these proceedings, relying upon 33 U.S.C. § 591 and Fed.R.Civ.P. 71A(k) as authority for this proposition. The procedural deviations claimed by appellants are that the Mississippi statutes authorizing condemnation of land for flood control provide, for purposes of valuation, for the appointment of a commission of land owners in the county in which the lands to be condemned are situated. These statutes further provide that if the valuation of the commission is not satisfactory to the land owners, then the issue as to the value of the property shall be determined by a jury composed of residents of the county where the land is located.[1] Appellants complain that the land in question, located in the valuable Delta section of Mississippi, was not valued by commissioners or a jury from the Delta, who would have been more understanding of these land values than were the jurors from the hill county.

We need not tarry to speculate upon the value insights of Delta men compared to hill county men. Section 591, passed in 1888, provided that condemnation proceedings be "prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." Where applicable, this language required conformity in procedural matters only; and insofar as it required such procedural conformity, it was superseded by Fed.R.Civ.P. 71A(h).[2] Accord,

---

1. Miss.Code Ann. ch. 3, §§ 2749–2782; ch. 7, §§ 4576–4599; ch. 9, §§ 4769–4286–01. (1942).

2. "Fed.R.Civ.P. 71A(h):
 If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or

within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the

United States v. 93.970 Acres of Land, 360 U.S. 328, 333, 79 S.Ct. 1193, 1196, 3 L.Ed.2d 1275, 1279, n. 7.

 The formulation of Rule 71A spanned fourteen years of dialectical and analytical detours, largely *because* of the sharp divergence of opinion as to the method to be prescribed for determining the compensation to be awarded to property owners.[3] What emerged in Rule 71A(h) was a complete and comprehensive construct for federal eminent domain proceedings, providing all the procedural niceties involved in condemnation machinery in the federal courts. Noticeably absent were any conformity clauses, save in Rule 71A(k), which is inapplicable here,[4] or any provision for a commission or jury to be selected from the particular county wherein the land *sought to be condemned is located.*

 Reliance on 40 U.S.C.A. §§ 258a—258e to import Delta jurors is also unrewarding. This statute is complementary to and congenial with Rule 71A, inasmuch as 40 U.S.C.A. §§ 258a—258e permits the prompt acquisition of title prior to suit, whereas Rule 71A provides condemnation proceedings for acquiring land in connection with a suit. The provision which *did* require conformity to state practice in condemnation proceedings, 40 U.S.C.A. § 258, has necessarily fallen by the wayside and been superseded by Rule 71A.

 One of the purposes of adopting Rule 71A was to achieve uniformity in federal condemnation proceedings. To reread the anarchist effects of conformity with state practice back into Rule 71A, as appellants herein request, would undermine one of the basic objectives of that rule.

## III.

 Finally, appellants would have us reverse because they assert that the consent of the state of Mississippi is required as a condition precedent to federal condemnation. The argument runs that even if Mississippi had conditionally agreed to condemnation, it could consent only to condemnation of a flowage easement, since that is the most that the state could have condemned. This argument is of no avail. State law cannot limit federal power of condemnation, Kohl v. United States, supra, where, as here, no impingement of state protected sovereignty is involved. In State of Oklahoma ex rel. Phillips v. Guy F. Atkinson Co., 313 U.S. 508, 534–535, 61 S.Ct. 1050, 1063–1064, 85 L.Ed. 1487, 1505 (1940), the contention was made that the United States could not condemn state owned land because the state would be deprived of measurable tax revenue. Justice Douglas, in rejecting that contention, confirmed the sanctity of federal condemnation in the following words:

> "The Tenth Amendment does not deprive 'the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end.' * * * The fact that land is owned by a state is no barrier to its condemnation by the United States. [citations omitted] There is no complaint that any property owner will not receive just compensation for the land taken. * * * 'Whenever the constitutional powers of the federal government and those of the state come into conflict, the latter must yield.'"

---

effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court."

3. See 7 Moore's Federal Practice §§ 71A.01–71A.05 (2d ed. 1966) and Paul, Condemnation Procedure Under Federal Rule 71A, 43 Iowa L.Rev. 231 (1958).

4. Rule 71A(k) applies only where a state's power of eminent domain is exercised *by* the state and was designed for those few cases that reach the federal court because of diversity. Notes of Advisory Committee on Rules accompanying Rule 71A Fed.R.Civ.P. (1951).

The meanders of federal programs such as the one here on the Yazoo must not be thwarted by unnecessary protrusions of state sovereignty. Implicit in and integral to our federalism is the respected right of our national government to condemnation. The perimeter of that right is constitutionally bounded but is not in state bondage. See United States v. Carmack, 329 U.S. 230, 236–239, 67 S.Ct. 252, 254–256, 91 L.Ed. 209, 214–215 (1946); Kohl, supra, 91 U.S. at 374, 23 L.Ed. at 452; United States v. Sixteen Parcels of Land, Etc., 281 F.2d 271, 274–275 (8 Cir. 1960).

Affirmed.