Esse Forrester O'BRIEN, joined by her husband, John L. O'Brien, and William F. O'Brien, Appellants,

v.

UNITED STATES of America, Appellee.

No. 24291.

United States Court of Appeals Fifth Circuit.

March 22, 1968.

Rehearing Denied June 3, 1968.

D. M. Wilson, Wilford W. Naman, Bryan, Wilson, Olson & Stem, Naman, Howell, Smith & Chase, Waco, Tex., for appellants.

William O. Murray, Jr., Asst. U. S. Atty., San Antonio, Tex., Edwin L. Weisl, Jr., Asst. Atty. Gen., Roger P. Marquis, Raymond N. Zagone, Attys., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES and GEWIN, Circuit Judges, and HANNAY, District Judge.

HANNAY, District Judge:

The proceedings below arose out of the exercise of the power of federal eminent domain. The condemned land consisted of some 87.78 acres out of a tract of 210.-65 acres owned by Appellants within the confines of the City of Waco, McLennan County, Texas. The purpose of the condemnation was the establishment of the Waco Reservoir Project in the Brazos River Basin in that locale of north central Texas.

The greater bulk of the taken land was for the purpose of extending the already existing adjacent lake. Included in this area was acreage on the outer periphery of the extended lake. This was taken for purposes necessary and incident to its use and control. No issue is presented here as to the right of the sovereign to take, subject to just compensation, this portion of the condemned land. An issue is presented as to the extent of acreage taken for the purpose of a necessary substitute road; the remaining question here involves the general issue of just compensation.

I.

The Appellants' land comprised, and mainly consisted of, a promontory overlooking a portion of the old lake and the area below the lake. The lake, as extended by the condemnation, drove a two pronged salient into the promontory. The promontory pointed generally in a northerly direction. At its foot and along the water's edge there was a road of *sufficient width to accommodate two vehicles*. (Emphasis added throughout). This was part of the old Lake Shore Drive. It extended from an area below the old dam which was to the east of Appellants' property around the northern edge of Appellants' property and on westerly. The intended use of the condemned land necessarily inundated this old Lake Shore Drive as it crossed Appellants' land. For the purpose of a substitute road, a relocated Lake Shore Drive, the government condemned approximately 9 acres of Appellants' land. Approximately 6 of these acres were taken in fee; the remaining approximate 3 acres were taken as a perpetual and assignable easement. The 6 acres consist of a strip 100 feet in width. The 3 acres is a strip of 50 feet in width. It is adjacent to the 100 foot strip. The 100 foot strip was for immediate construction of new roadway. This road is of two lane dimension. Transfer of the entire 9 acre strip to the City of Waco, which had received the condemned portion of the old Lake Shore Drive as a dedication from the landowners, was contemplated. There is nothing in the record to suggest that fulfillment of this purpose was ever other than a virtual certainty. Appellants complain that the taking of the entire 9 acre strip was unauthorized; that it exceeded the area embraced by the old road and was a design to enable the City of Waco to eventually construct a roadway of as many as four lanes.

As a general and fundamental principle, the exercise of the sovereign

right of eminent domain is within the legislative power and mere questions of its range and extent in particular cases are ordinarily not subject to judicial correction and control. West Inc. v. United States, 5 Cir., 374 F.2d 218, 221, and authorities cited. Absent improper or corrupt subversion of legally delegated authority to define the extent of condemnation, this decision rests with the appropriate Executive officer concerned. West, Inc. v. United States, supra, at 222–223. There is no dispute that the taking here in question was for a valid public use. The Declaration of Taking by the Secretary of the Army states, inter lia:

"The public uses for which said land is taken are as follows: The said land is necessary adequately to provide for the construction and operation of a flood control project and for other uses incident thereto. The said land has been selected by me for acquisition by the United States for use in connection with the establishment of Waco Reservoir on the Bosque River in the Brazos River Basin, Texas, and for such other uses as may be authorized by Congress or by the Executive Order."

There is no showing of prejudice to Appellants resulting from this taking for the new roadway. There is no specific issue of just compensation in respect to this particular item of land.

Appellants rely upon wording in the Flood Control Act of 1960, Title 33, U.S. C.A. Section 701r–1(b), amended in 1962. This amendment redesignated subsection (b) as subsection (c) and, by Appellants' concession, did not otherwise alter the controlling statute in material parts.

Title 33, U.S.C.A. Section 701r–1(c) reads:

"For water resources projects to be constructed in the future, when the taking by the Federal Government of an existing public road necessitates replacement, the substitute provided will, as nearly as practicable, serve in the same manner and reasonably as well as the existing road. The head of the Agency concerned is authorized to con-struct such substitute roads to design standards comparable to those of the State, or, where applicable State standards do not exist, those of the owning political division in which the road is located, for roads of the same classification as the road being replaced. The traffic existing at the time of the taking shall be used in the determination of the classification. In any case where a State or political subdivision thereof requests that such a substitute road be constructed to a higher standard than that provided in the preceding provisions of this subsection, and pays, prior to commencement of such construction, the additional costs involved due to such higher standard, such Agency head is authorized to construct such road to such higher standard. Federal costs under the provisions of this subsection shall be part of the non-reimbursable project costs."

The statute, read in its entirety, supports the action of the government rather than the complaint of the Appellants. An added consideration is the prospective need for maintenance. The ruling in Seneca Nation of Indians v. United States, 2 Cir., 338 F.2d 55, 57, certiorari denied, 380 U.S. 952, 85 S.Ct. 1084, 13 L. Ed.2d 969, is appropriate here:

"We see no reason to interfere with this reasonable exercise of delegated administrative discretion as to the amount of land required for the relocation of the road. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170 (1893); Berman v. Parker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). * * * as the District Court found, the increased highway requirements result in part from the * * * Project itself. Because the Secretary of the Army acted within his authority and reasonably, we affirmed the judgment."

## II.

The issue of compensation was submitted by the District Court to a Commission under Rule 71A(h), Federal Rules of Civil Procedure, in December of 1962.

The Commission submitted its first report on June 28, 1963. It is undisputed that the highest and best use of the property before the taking was residential subdivision. The valuations placed by the Appellants' witnesses and those made by the witnesses for the government were at great variance. The two witnesses for the Appellant set the just compensation figure at $367,375.00 and $345,675.00 respectively. Two of the government's witnesses were of the opinion that the property had been enhanced by the taking. The evidence of the third government witness was excluded by the Commission because " * * * he had considered access to the property in fixing market value after the taking." This question of access, and the consideration to be given to it, is the kernel of the issue now before the Court. The Commission's recommendation at that time was that the property had a market value before taking of $420,000.00; that it had a market value after taking of $308,528.20; and that the difference and the amount of just compensation was $111,471.80.

The report was to be many times recommitted to the Commission before there was a final acceptance by the District Court. In their protracted course, the proceedings below were to transpire before three separate District Judges over a course of some four years and seven months. By final judgment entered August 16, 1966, the District Court accepted the Minority Commission's report awarding compensation in the amount of $70,224.00. The Majority Commission adhered to its original assessment from which, indeed, the minority had relented only after the second recommittal.

■ The power of a District Judge in reviewing the findings and recommendations of a Commission under Rule 71A (h), Federal Rules of Civil Procedure, is the same as its power over the findings of fact by a Master under Rule 53(e) (2), Federal Rules of Civil Procedure. United States v. Merz, 376 U.S. 192, 198–200, 84 S.Ct. 639, 11 L.Ed.2d 629.

Rules 71A(h) provides, inter alia:

" * * * If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and *its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53.*"

Rule 53(e) (2), Federal Rules of Civil Procedure, provides, inter alia:

" * * * In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. * * * *The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.*"

■ The rule of decision in this Circuit in Rule 71A(h) proceedings is that the Court of Appeals reviews the determination of the District Court rather than that of the Commission in applying the "clearly erroneous" standard to the finality of the prior findings of fact. United States v. Twin City Power Company of Georgia, 5 Cir., 253 F.2d 197; United States v. Tampa Bay Garden Apartments, Inc., 5 Cir., 294 F.2d 598; Parks v. United States, 5 Cir., 293 F.2d 482; United States v. 2,872.88 Acres of Land, etc., 5 Cir., 310 F.2d 775, modified in United States v. Merz et al., 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629.

■ Viewed upon the whole, but not without exception as hereafter to be shown, "the evidence before the commission met the standard of substantiality to withstand a reversal by the district court." 310 F.2d, at 779. The record reflects that the topography of the taken land was characterized by ravines and crevices—a factor most likely adverse to residential development of the land. Increased water frontage of the remaining property unimpeded by the old Lake

Shore Drive clearly touches upon the question of enhancement of value. The improved artery, the new Lake Shore Drive, could reasonably be said to have the same enhancing effect. It does but very little to diminish the increased new water frontage. Lastly, the valuation of what is in effect $800.00 for each acre taken, in light of the record and the applicable test of market value of the whole before and after the taking, is generally within the bounds of reasonableness.

### III.

The area in which exception must be taken to the conclusion below is on the question of access, legal access, to the new roadway. This does not involve Appellants' land that lies east of the new lake salient. This portion, in its present extent, remains adjacent to the Forrester Lane that was the easternmost boundary of Appellants' property. Appellants' land west of the new lake salient, however, was effectively landlocked by the project. Prior to the taking Appellants' property had at least three access routes to adjacent roadways. All of these are now denied the western sector of Appellants' land.

There is, it is true, evidence in the record that the City of Waco would, as a practical and prospective matter, make the new Lake Shore Drive available to newly created routes of access that may be established by the Appellants. This Court agrees with Appellants that there is a substantive distinction between this prospective practical accessibility on the one hand and accomplished legal access on the other. The District Court patently recognized this unsolved problem area in the case. In its third recommittal to the Commission the District Court directed the majority to specify the amount of severance damages, if any, that they attributed to the alleged loss of access. The majority responded with *a specific finding of severance damages arising out of loss of access* in the amount of $5,000.00. This was based upon a government's witness' testimony that it would require $5,300.00 to build a road from

the homesite on the west side to the new Lake Shore Drive. There was no existing road from this homesite to the new Lake Shore Drive. This homesite was located practically the entire depth of the property northward of the new Lake Shore Drive. The majority commission report was thus responsive to the Order of Recommittal.

The minority commission, in its previous report, had in effect stated that the question of access had been considered in its determination of just compensation in the amount of $70,224.80. In the same third Order of Recommittal the minority was directed to elaborate on the basis of its assessment with particular emphasis on the access issue. This point was emphasized in an amendment to the third Order of Recommittal. It stated in material part:

"It further appearing to the Court that if * * * the minority member should state that in the original report of the Commission he did not consider what the amount of severance damages, as such, attributable to the alleged loss of access would have been, he should make additional findings with respect to the following:

(d) Assuming that there was loss of access, what do you now consider would have been the amount of severance damages properly attributable to such loss of access giving the path followed and specifying the testimony or other evidence relied upon?"

There was, after all, a discrepancy of $41,247.80 between the original and eventual assessment of the Minority Commission.

The Minority Commission's ensuing report, which was otherwise adequately detailed and reasoned, was non-responsive on the Court directed issue of severance damages arising from loss of access. The following quotation from this report, in addition to others that could be extracted from it, will amply demonstrate this fact:

" * * * It is very difficult for me to assume that there was a loss of ac-

954

cess. I cannot feature the Government's spending so much money to build a road and then not letting the landowners use it. I do not believe that there is any evidence that says that the City or the Federal Government is going to deny access when the road is completed, I therefore, cannot answer the question asked by the Court: 'Assuming that there was a loss of access, what do you now consider would have been the amount of severance damages properly attributable to such loss of access, giving the path followed and specifying the testimony or other evidence relied upon?' The only way that I could consider that there would be no access, would be to disregard the testimony of the city officials and of Mr. John L. Smith of the Corps of Engineers, which I have set out in my report."

This non-responsiveness by the Minority Commission on what may now be called the severance damage issue continued through the fourth Order of Recommittal and the minority's answer, or lack of an answer, thereto. In this limited but material respect the minority not only neglects a material finding of fact but forecloses, on its own motion and erroneously, a question of law. This Court is of opinion that the Minority Commission provided no substantial basis for acceptance of his assessment in this limited respect. This deficiency may be treated in light of *a responsive specific finding in the record* on the issue of severance damages due to loss of access.

■ This Court is of the considered opinion that this litigation can and should be concluded by adding to the District Court's determination of just compensation the *specific finding in the record* of severance damages due to loss of legal access, to wit, $5,000.00. United States v. Merz, supra; Rules 72A(h) and 53(e)(2), Federal Rules of Civil Procedure.

*Accordingly, the judgment below is affirmed as modified herein and remanded to the District Court for proceedings consistent herewith.*