## UNITED STATES *v.* MERZ ET AL.

No. 65. Argued January 13–14, 1964.—
Decided February 24, 1964.*

---

*Together with No. 79, *2,872.88 Acres of Land et al.* v. *United States,* on certiorari to the United States Court of Appeals for the Fifth Circuit, argued January 14, 1964.

*Roger P. Marquis* argued the cause for the United States in No. 65. With him on the brief were *Solicitor General Cox* and *Raymond N. Zagone.*

*Denver W. Meacham* argued the cause for respondents in No. 65. With him on the brief was *William J. Holloway, Jr.*

*Forrest L. Champion, Jr.* argued the cause for petitioners in No. 79. With him on the briefs were *W. Lowrey Stone, Lowrey S. Stone* and *Jesse G. Bowles.*

*Harold S. Harrison* argued the cause for the United States in No. 79. On the brief were *Solicitor General Cox, Roger P. Marquis* and *Hugh Nugent.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

These cases present questions concerning the standards governing the preparation and review of reports of commissions appointed by district courts under Rule 71A (h) of the Federal Rules of Civil Procedure [1] to determine the

---

[1] Rule 71A (h) provides:

"(h) Trial.

"If the action involves the exercise of the power of eminent domain under the law of the United States, any tribunal specially constituted by an Act of Congress governing the case for the trial of the issue of just compensation shall be the tribunal for the determination of that issue; but if there is no such specially constituted tribunal any party may have a trial by jury of the issue of just compensation by filing a demand therefor within the time allowed for answer or within such further time as the court may fix, unless the court in its discretion orders that, because of the character, location, or quantity of the property

issue of just compensation [2] in eminent domain proceedings. Some of the property interests taken are fee interests and some are flowage easements, road easements, and clearance easements.

---

to be condemned, or for other reasons in the interest of justice, the issue of compensation shall be determined by a commission of three persons appointed by it. If a commission is appointed it shall have the powers of a master provided in subdivision (c) of Rule 53 and proceedings before it shall be governed by the provisions of paragraphs (1) and (2) of subdivision (d) of Rule 53. Its action and report shall be determined by a majority and its findings and report shall have the effect, and be dealt with by the court in accordance with the practice, prescribed in paragraph (2) of subdivision (e) of Rule 53. Trial of all issues shall otherwise be by the court."

Rule 53 provides in relevant part:

"(e) Report.

.          .          .          .          .

"(2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 10 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6 (d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

As to the history of Rule 71A (h) see 7 Moore, Federal Practice (2d ed. 1955), pp. 2709–2712; Nealy, Rule 71A (h) in Federal Condemnation Proceedings, 23 Fed. Bar Jour. 45 (1963); H. R. Rep. No. 739, 82d Cong., 1st Sess.; S. Rep. No. 502, 82d Cong., 1st Sess.; S. Rep. No. 112, 83d Cong., 1st Sess.; Preliminary Draft of Proposed Rule to Govern Condemnation Cases, Advisory Committee on Rules for Civil Procedure, June 1947.

For the Rule in operation see Annual Report, Judicial Conference of the United States, 1961, pp. 17, 106, 254; Annual Report, Judicial Conference of the United States, 1962, pp. 30, 212–214; H. R. Rep. No. 1467, 86th Cong., 2d Sess., p. 11.

[2] No question is presented concerning the right to jury trial notwithstanding Rule 71A (h). While the Government asked for a jury trial in both cases, the question was not preserved nor brought here.

In No. 79 the District Court instructed the Commissioners on the standards of "just compensation," the factors that could be considered in determining it, the weight to be given the opinion of competent experts, the burden of proof, the conduct of the hearing to be held, and the propriety of viewing the lands in question. And they were instructed to file a written report "setting forth separately your findings of fact and conclusions of law and the amount of just compensation to which you think each property owner or claimant is entitled."

In No. 65 the District Court gave no instructions to the Commissioners, so far as the record shows.

The hearing in each case was transcribed by a reporter. In each, both the landowners and the Government produced witnesses. In No. 65 the effect of clearance easements on agricultural uses and on mineral values was contested. In No. 79 the testimony was widely at variance on the value of the fees. Severance damages were also hotly contested. The value of improvements was also at issue as respects one property.

In No. 65 the Commission filed a report in which it listed each tract, following which it added a dollar figure for "Damages Assessed." The Government objected to the adequacy of the report, as a result of which a supplemental one was filed which described in greater detail the clearance easements taken and stated that the highest and best use of the land was for general agricultural purposes. The supplemental report added that: (1) the United States was entitled to take the property and the landowners were entitled to just compensation; (2) just compensation was to be determined by subtracting the value of the landowners' interests immediately after the taking from their value immediately before the taking; (3) the use to which the Government would put the area taken by the clearance easements was not an issue in the case; and (4) certain evidence pertaining to

a tract taken in fee simple was stricken, and the Government's motion to strike the testimony of one witness for the landowners was overruled.

In No. 79 three reports, one covering each landowner, were filed. Each report contained capsule résumés of all testimony heard, and, as findings of fact, set forth a description of the interests taken, the lands' highest and best use, the acreage remaining after the taking and the amount of severance damage to it, the value of the fees taken and of each easement, and the total awards. Each report also stated that the United States had the right to take the land and that the landowners were entitled to just compensation, including severance damages. One report stated that a government objection to certain evidence had been overruled. The first report, in addition to placing a lump sum value on the fee interest taken, allowed no severance damage for the "home place," four miles away, and yet granted $15,785 severance damages to other portions of the remaining tract without explication and in spite of the fact that the landowner's expert fixed severance damages, apart from the "home place," at $12,435. In the second report the landowner's expert witness valued the entire tract at $52,500, the land taken at $36,125, and improvements at $12,700. The Government's experts did not value improvements separately but assessed the fee interest taken at $34,000. The Commission, without any findings concerning improvements, awarded $52,950—a sum in excess of the valuation placed on the full 400 acres by the landowner's expert—as compensation for taking about 330 acres. And it awarded $3,500 for severance damages though the highest estimate was $1,275. The third report valued lands at $105,080 while the landowner's own expert valued them at $93,693. The Commission also awarded severance damages without any indication as to the basis for them.

In both No. 65 and No. 79, the District Courts adopted the Commissions' reports, setting forth no additional or supplementary grounds of decision nor taking further evidence to resolve any of the objections tendered by the Government. In No. 65 the Court of Appeals affirmed, stating that, although there was a sharp conflict in the evidence as to the amount of the damages, the awards were well within the range of the conflicting testimony. 306 F. 2d 39, 42. In No. 79 the Court of Appeals remanded for resubmission to the Commissioners, saying that the reports did not indicate which evidence the Commission credited and which it discredited, the degree to which the awards were based on the testimony of comparable sales, whether the sales were in fact comparable, and to what extent the awards depended on the opinions of nonexpert witnesses. 310 F. 2d 775, 777, 779. The cases are here on writs of certiorari. 372 U. S. 974, 975.

The use of a commission to resolve the issue of just compensation is justified by the facility with which commissioners may inspect the property and a likelihood that uniformity of awards may be realized expeditiously. At the same time, there is danger that commissioners, unlike juries, may use their own expertise and not act as a deliberative body applying constitutional standards. A jury, until it retires, sits under the direct supervision of the judge, who rules on the admissibility of evidence, who sees that witnesses are properly qualified as experts, and who polices the entire hearing, keeping it within bounds. Then in due course the judge instructs the jury on the law, answering any inquiries its members may have on the law. The jury is under surveillance from start to finish and subject to judicial control. Hence its general verdict that the land is worth so many dollars is not overturned for lack of particularized findings.

The judge who uses commissioners, however, establishes a tribunal that may become free-wheeling, taking the law from itself, unless subject to close supervision. The first responsibility of the District Court, apart from the selection of responsible commissioners, is careful instruction of them on the law. That was done in one of the present cases. But the instructions should explain with some particularity the qualifications of expert witnesses, the weight to be given other opinion evidence, competent evidence of value, the best evidence of value, illustrative examples of severance damages, and the like. The commissioners should be instructed as to the manner of the hearing and the method of conducting it, of the right to view the property, and of the limited purpose of viewing. They should be instructed on the kind of evidence that is inadmissible and the manner of ruling on it.

The commissioners should also be instructed as to the kind of report to be filed. Since by Rule 71A (h) the report has the effect of a master's findings of fact under Rule 53 (e)(2), the commission should be instructed as to what kind of findings should be included. Conclusory findings are alone not sufficient, for the commission's findings shall be accepted by the court "unless clearly erroneous"; and conclusory findings as made in these cases are normally not reviewable by that standard, even when the District Court reads the record, for it will have no way of knowing what path the commissioners took through the maze of conflicting evidence. See *United States* v. *Lewis,* 308 F. 2d 453, 458. The commissioners need not make detailed findings such as judges do who try a case without a jury. Commissioners, we assume, will normally be laymen, inexperienced in the law. But laymen can be instructed to reveal the reasoning they use in deciding on a particular award, what standard they try to follow, which line of testimony they adopt, what measure of severance damages they use, and so on. We do

not say that every contested issue raised on the record before the commission must be resolved by a separate finding of fact. We do not say that there must be an array of findings of subsidiary facts to demonstrate that the ultimate finding of value is soundly and legally based. The path followed by the commissioners in reaching the amount of the award can, however, be distinctly marked. Such a requirement is within the competence of laymen; and laymen, like judges,[3] will give more careful consideration to the problem if they are required to state not only the end result of their inquiry, but the process by which they reached it.[4]

Moreover, the litigants have a responsibility to assist the process by specifying their objections to instructions, by offering alternate ones, and by making their timely objections to the report in specific, rather than in generalized form, as required by equity practice. See *Sheffield & Birmingham R. Co.* v. *Gordon,* 151 U. S. 285, 290, 291.

If those procedures are followed and the District Court adopts the report, as it may under Rule 53 (e)(2), the Court of Appeals will have some guidelines to help it determine whether the report is "clearly erroneous" within the meaning of Rule 53 (e)(2). If the use of those guidelines by the District Court leaves it in doubt, there are alternatives. It may "modify" the report on the basis of the record made before the commissioners,

---

[3] See *Burlington Truck Lines, Inc.,* v. *United States,* 371 U. S. 156, 167–168; *United States* v. *Forness,* 125 F. 2d 928, 942–943; *United States* v. *Lewis,* 308 F. 2d 453, 456.

[4] The Hague Convention of October 18, 1907, by Article 79 provided that an arbitration award "must give the reasons on which it is based." Chief Justice Hughes—then Secretary of State—said in a case involving that provision: it "does not mean that the statement of reasons must be cast in any artificial form, much less that the reasons given should be those which the defeated party would recognize as adequate." The Secretary of State to President Harding, Jan. 11, 1923, II Foreign Relations of the United States, 1923, pp. 617, 620.

or it "may reject it in whole or in part or may receive further evidence or may recommit it with instructions"—all as provided in Rule 53 (e)(2). We think the District Court in each of these cases should have the opportunity under Rule 53 (e)(2) to make its decision afresh, in light of this opinion. We write on a clean slate against a background of a contrariety of views among the circuits. The reports in each of these cases leave much to be desired, measured by the standards we have suggested. None of the reports should have been adopted without more by the District Court. On remand, its informed discretion will be used to determine whether the matters should be resubmitted in whole or in part to the respective commissioners or whether, in light of the exigencies of the particular case, the court should itself resolve the disputes on the existing records,[5] or on those records as supplemented by further evidence.[6]

The judgment in No. 65 is reversed and the judgments in No. 79 are modified and each is remanded to the District Court for proceedings in conformity with this opinion.

*It is so ordered.*

---

[5] See *United States* v. *44 Acres of Land,* 234 F. 2d 410, 414; *United States* v. *Twin City Power Co.,* 248 F. 2d 108, 112; *United States* v. *Certain Interests in Property,* 296 F. 2d 264, 268; *United States* .v. *Carroll,* 304 F. 2d 300, 303–304.

[6] See *United States* v. *Carroll, supra,* 303–304.