**UNITED STATES of America,
Appellee,**

v.

**421.89 ACRES OF LAND, MORE OR LESS, Situated IN MARION, POLK AND WARREN COUNTIES, STATE OF IOWA, and Orval Kain, et al., Appellants.**

**No. 71–1682.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 12, 1972.

Decided Sept. 14, 1972.

Robert E. Dreher, Richard A. Miller, John G. Fletcher, Des Moines, Iowa, for appellants.

Peter R. Steenland, Atty., Dept. of Justice, Washington, D. C., Kent Frizzell, Asst. Atty. Gen., Allen L. Donielson, U. S. Atty., Des Moines, Iowa, George R. Hyde, Thomas L. Adams, Jr., Attys., Dept. of Justice, Washington, D. C., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and HEANEY, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is an appeal by landowners from final judgment entered September 20, 1971, overruling their objections to the report of the condemnation commission, as amended, and approving the award recommended by the commission and the judgment based upon such award.

The United States commenced this action on February 12, 1968, to acquire for the Red Rock Dam project flowage, levee, road, drainage and borrow pit easements upon real estate owned by the appellant landowners identified as tracts 3216E, 1, 2, 3, 4 and 5; 3217E, 1, 2 and 3; and 3218E, 1, 2, and 3. The legal description of the land and the acreage involved are not in controversy. Estimated just compensation in the amount of $94,650.00 was deposited with the court.

After some title disputes were resolved in favor of appellant landowners, the court appointed a commission under Rule 71A(h) to hear and determine the amount of damages. After a full hearing and inspection of the land, such commission by their report as amended fixed compensation for the taking of such tracts as follows: 3216E series, $27,195.00; 3217E series, $37,796.00; and 3218E series, $19,155.00. Partial distribution had been made to appellants of the Government deposit. The court determined that appellants had been overpaid $9,380.00 on the 3216E series, and had been overpaid $8,345.00 on the 3218 series, and ordered repayment of such sums into the registry of the court. On the 3217E series, the court determined a balance of $9,746.00 was due the landowners.

White Materials Corporation is now the owner of the interests of appellants in the condemned real estate and is the real party in interest on this appeal. The relevant facts are very fully set out in the trial court's unreported opinion.

Appellants set out ten points upon which they rely for reversal which may be consolidated and summarized as follows:

I. Errors in reception of evidence.

II. Errors in instructions.

III. Error in finding substantial evidence supports the award made.

IV. Error in failing to make any award for the borrow pit in tract 3216E.

V. Error in computation of interest.

Our examination of the record satisfies us that no prejudicial error has been committed and that the judgment should be affirmed.

The most substantial controversy on this appeal relates to the value of some 149 acres of unworked gravel deposits on the combined tracts. Appellants at the time of the condemnation were using all tracts as a unit for a large-scale operation, supported by expensive equipment, for the production and sale of gravel. Both the commission and the court accepted appellants' contention that the highest and best use of the land at the time of the taking was for gravel mining.

The concept of market value of the condemned property at the time of taking is the standard for ascertaining the compensation to be paid the condemnee. United States v. Miller, 317 U.S. 369, 373–374, 63 S.Ct. 276, 87 L.Ed. 336 (1943); United States v. State of South Dakota, 329 F.2d 665, 668 (8th Cir. 1969).

The principal adverse effect of the flowage easement was the suspension of mining operations by reason of high water for a longer period. On the land

taken for levee, road and drainage easements, the commission considered the taking to be a total taking and allowed damages to the extent of the full market value of the land taken for such purposes.

The easement with respect to the unmined gravel land was a flowage easement. The right to mine the gravel remained in the landowners. It is stipulated that the permanent elevation of the pool is 725 feet. The dam was considerable distance downstream from appellants' land. The trial court states:

"The Commission indicated that among other things in arriving at its finding of diminution in value, it considered that: (1) the flowage easement caused by the Dam project would effect the sand and gravel operations when the water level reached 770 feet opposite the property in question which based on experience would be 'once in 9 or 10 years for a limited period;' (2) the restrictions against building a habitation for humans or a structure, without written consent of the Corps of Engineers; (3) the existence of levees; (4) the likelihood of flooding caused by the project; (5) no consideration was given to high water not caused by the project; (6) restrictions placed on the property by Iowa law not chargeable to the condemnor. After reviewing the record concerning the aforementioned factors, as well as other considerations mentioned by the Commission in its report, and appearing in the record, the court finds that the Commission's finding of $200 per acre diminution in value due to the flowage easement is amply supported by the evidence. The evidence indicates this property was subject to frequent flooding before the Dam was built. . . ."

We now reach consideration of the errors urged.

## I.

Appellants urge the court erred in receiving evidence over their objection of sales and sale prices of allegedly comparable properties in the absence of a satisfactory showing that the properties were comparable. The sole valuation witness for the Government, Hastings, qualified as an expert witness on real estate and gravel deposit properties and flowage easements. He cited evidence of a number of sales of gravel properties which he considered in his valuation of the property here in issue. One of such sales was that of tract 3217E for $420.00 an acre some two years before. Appellants claim such sale was not comparable and that the unpumped gravel land was less than that described by the witness. Another sale was that of 20 acres of gravel land a few miles away for $1,000.00. The difference between the tracts just described and appellants' land was fully developed.

As stated in United States v. Whitehurst, 337 F.2d 765, 775 (4th Cir. 1964):

"It is settled law that comparable sales are the best evidence of value. * * * Real property may be unique and the comparable sales too few to establish a conclusive market price, '[b]ut that does not put out of hand the bearing which the scattered sales may have on what an ordinary purchaser would have paid for the claimant's property.' United States v. Toronto, Hamilton & Buffalo Nav. Co., 338 U.S. 396, 402, 70 S.Ct. 217, 221, [94 L.Ed. 195] (1949)."

No two properties are exactly alike. The commission had before it full information as to the similarities and dissimilarities between the property here involved and that involved in the other sales. In United States v. 3,698.63 Acres, etc., North Dakota, 416 F.2d 65, 67 (8th Cir. 1969), we held:

"Generally, all evidence on market value in condemnation cases should relate to what a willing buyer would pay a willing seller for the land. * * * Sales of comparable land in the area most accurately evidence fair market value. * * * However, the law is not wedded to any particular formula or method for determining fair market value as the measure of just com-

pensation. \* \* \* Reproduction costs, capitalization of net income or an interaction of these determinants may also be considered. \* \* \* The weight to be given to factual and opinion evidence on fair market value is for the jury. \* \* \* "

■ Hastings' opinion as an expert on land value was admissible. Defendants' valuation witnesses were permitted a wide leeway in giving their testimony as to the value before and after the taking, including testimony as to rents and royalties received, quantity and the value of the gravel.

We hold that the court committed no prejudicial error with respect to the admission of evidence.

## II.

■ Appellants' exceptions to the instructions lack merit. Our examination of the instructions as a whole satisfies us that they met the standards prescribed in United States v. Merz, 376 U. S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964). The court correctly followed the applicable law in advising the jury as follows:

"Where they are available, evidence of sales of comparable or similar lands is considered the best evidence of the value of the tract to which they are compared. The determination of the weight you believe such evidence is entitled to receive, however, is the determination for the Commission to make in each instance."

No prejudicial error occurred by the repetition of a similar instruction at a later point. Defendants' contention that the instructions are not fairly balanced and are slanted in favor of the Government is not substantiated.

## III.

■ The determination of the reasonable market value of the land covered by the flowage easement before and after the taking presents a fact issue for resolution by the fact finder, here the Commission. The Commission's detailed report summarizes the conflicting evidence on value and reflects that proper legal standards were applied in making the value determination.

Hastings placed the total damage at $52,000.00. He testified that the market value of the gravel deposit land was diminished $100.00 per acre by the taking. Plaintiffs' witnesses placed the damage at figures ranging from $325,000.00 to $565,000.00. The landowners' valuation was based largely on the estimated amount of gravel in place. For example, Mr. Schuler who valued the gravel deposit land at $4,800.00 before taking and $2,400.00 per acre thereafter stated the valuation was "based on the royalty figure. That's all I used. Valued the gravel in place and valued the 160 acres of unpumped land at $4800.00 per acre."

The Commission determined that the landowners' testimony on market value was too high and the Government's valuation was too low. It determined the diminution in market value of the unpumped gravel land to be $200.00 per acre.

The trial court, after hearing the landowners' objections to the report, approved the report in a well-considered memorandum opinion. We are satisfied that the Commission's award is not clearly erroneous. It is supported by substantial evidence and is not induced by an erroneous view of the law. See United States v. 3698.63 Acres of Land, etc., North Dakota, 416 F.2d 65 (8th Cir. 1969); Evans v. United States, 326 F.2d 827, 831 (8th Cir. 1964); United States v. Rainwater, 325 F.2d 62, 65 (8th Cir. 1963).

## IV.

■ We agree with the trial court that no error was committed in not allowing separate damages for taking of temporary borrow pit rights on tract 3216E–4. The trial court states: "This three-year easement for temporary borrow area is included in tract 3216E–4 (flowage easement) for which the Commission allowed $200 per acre or $11,040 as damages. The failure of the Commission to make further award is warranted by the record."

Gravel mining was the highest and best use of the land. The removal of some of the overburden from the gravel land caused no substantial damage above that previously allowed for the flowage easement.

### V.

The trial court awarded interest on the overpayment made to the land-owners out of the Government deposit from the date of the disbursement. Landowners contend that interest should run only from the date of the judgment. We so held in United States v. 399.77 Acres of Land, etc., Arkansas, 420 F.2d 324 (8th Cir. 1970). See Sykes v. United States, 392 F.2d 735, 739 n. 2 (8th Cir. 1969).

While the issue raised is not free from doubt, we adhere to our prior holding in the cases just cited and modify the judgment to provide for interest on the amount to be paid as restitution only from the date of the judgment.

The judgment appealed from is modified to provide for interest on the amounts to be paid as restitution only from the date of the judgment, and as so modified, the judgment is affirmed.