**UNITED STATES of America,
Plaintiff,**

v.

**3.0 ACRES OF LAND, MORE OR LESS, situate IN ROCKBRIDGE COUNTY, COMMONWEALTH OF VIRGINIA, and Larry B. Hall, et al., Defendants.**

**Civ. A. No. 68–C–30–L.**

United States District Court,
W. D. Virginia,
Lynchburg Division.

July 11, 1974.

Leigh B. Hanes, Jr., U. S. Atty., Roanoke, Va., for plaintiff.

Wm. Rosenberger, Jr., Lynchburg, Va., for defendants.

OPINION AND ORDER

TURK, Chief Judge.

This is a land condemnation case which began on July 18, 1968 when the United States (plaintiff) filed a complaint in condemnation and a declaration of taking and deposited $3,000 as the estimated just compensation in the registry of this court. On July 24, 1968, the court determined that the title to the subject land vested in the United States as of July 18, 1968. Thereafter, pursuant to Rule 71A(h) of the Federal Rules of Civil Procedure, the court appointed three Commissioners to determine the

issue of just compensation for the property.

On November 14, 1970, the Commission viewed the property and heard evidence of the United States and the former equitable owners of the land, Hollis L. Barnett and Victoria D. Barnett (defendants). The Commission reconvened on December 5, 1970, heard closing arguments of counsel and determined just compensation to be $18,000. The Commissioners' report was filed on December 7, 1970, and the United States timely filed written objections pursuant to Rule 53(e)(2) of the Federal Rules of Civil Procedure. The government's objections to the Commissioners' report are the subject of this opinion.

Relying primarily on the case of United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964) the government first argues that the Commissioners' report is insufficient as a matter of law because of its conclusory nature. With respect to the evidence presented and the decision reached, the award merely states:

> "The landowner introduced the testimony of Hollis L. Barnett and expert witnesses Johnathan Crossley, V. Stuart Underwood and Ralph D. Lackey, who estimated the value of the property taken at various sums from $26,000 to $80,000. The United States introduced the testimony of Carl E. Vause, William O. Hooper and Oscar H. Beasley, Jr. The last two expert witnesses estimated the value of the property taken at $3,200 and $3,600 respectively.

> Upon the view, evidence taken, argument of counsel and instructions of the Court granted November 13, 1970, the undersigned determined that the fair market value of the land taken at the time of taking was Eighteen Thousand Dollars ($18,000.00)."

In United States v. Merz, supra, the Court reviewed two cases involving eminent domain proceedings in which reports by Commissions appointed pursuant to Rule 71A(h) were utilized. In one case, the challenged report basically described the clearance easements taken, stated the highest and best use for the land, indicated that just compensation was to be determined by subtracting the landowners' interest immediately after the taking from their value immediately before the taking, and assigned a dollar figure for damages assessed. In the second case, the Commission's report contained résumés of all testimony heard; a description of the interest taken; the highest and best use of the lands; the acreage remaining after the taking and the amount of severance damage to it; the value of the fees taken; the value of the easements; and the total awards. The Court noted in the second case that some of the awards were in excess of the evidence and that severance damages were allowed in some instances and denied in others without explanation. In both cases, the reports had been adopted by the District Courts; the Supreme Court found both reports to be inadequate.

The Court in *Merz* distinguished the use of a Commission from that of a jury on the basis of the control exercised by the judge over the hearing to which the jury is exposed. In the case of a Commission, the Court held that a conclusory award would not be sufficient because in such a case the District Court "will have no way of knowing what path the commissioners took through the maze of conflicting evidence." 376 U.S. at 198, 84 S.Ct. at 643. Thus the Court stated that the District Court should carefully instruct the Commissioners on the law and the type of report to be filed and noted the responsibility of the litigants "to assist the process by specifying their objections to instructions, by offering alternate ones, and by making their timely objections to the report in specific, rather than in generalized form, as required by equity practice." 376 U.S. at 199, 84 S.Ct. at 643.

There is no doubt that the Commission report now before this Court leaves much to be desired in light of *Merz*, and the reason for this is attrib-

utable to the failure of either side to request instructions as to the kind of report to be filed. However, after reviewing the record in this case, the court is of the opinion that because of the uncomplicated issue presented and the fact that almost six years have elapsed since the inception of this case, little would be gained by resubmitting the case to the Commissioners for more specific findings. In *Merz* the Court noted Rule 71A (h) incorporates Rule 53(e) pursuant to which the District Court "may 'modify' the report on the basis of the record made before the commissioners. . . ." 376 U.S. at 199, 84 S.Ct. at 644. The issue presented is not complex and the transcript indicates that the Commissioners focused clearly on it. As such, this case presents little difficulty in determining the path taken by the Commission in reaching the award in question, and this court will accordingly review the case without further consideration by the Commission.

The subject property is a three acre tract of land, rectangular in shape which borders the Blue Ridge Parkway for a distance of 630 feet at an area known as Whetstone Ridge. The land is crossed by a public road which affords access to the Parkway all year. At Whetstone Ridge the Department of the Interior maintains a restaurant, a gift shop, a service station and maintenance area, and two houses for park rangers.

Mr. Barnett testified that he bought the property in 1964 for $1,250 and lived on the property from the fall of 1965 until March or April, 1966. During this time, he spent $8,500 in improvements to the property which included clearing and leveling it, installing a well, building a reservoir and renovating a cabin on the property. Mr. Barnett indicated that he had initially considered building cabins on the property but had concluded that he would build a motel according to a plan he obtained from Econo-Lodge.

Mr. Barnett called several expert witnesses who shared his opinion that the subject property was uniquely suited for a motel. Mr. Johnathan Crossley, a member of the American Institute of Real Estate Appraisers and the American Society of Appraisers, valued the property at $79,600 by means of the "land residual technique" of valuation after having concluded that the highest and best use of the property was a motel site. He noted that the subject property was unique in that it had a built-in restaurant and gas station and there were no other motels along that portion of the Parkway. His "land residual" valuation was derived by estimating the cost of the motel complex, the average room rental, the percentage occupancy rate, the potential operating costs, an interest rate designed to show a recapture and return on investment and the life of the motel. From these estimates, he estimated the net income generated and concluded that this return justified valuing the property at $79,600.

Mr. Crossley sought to check his valuation by means of a direct sales comparison but admitted that the property considered was not directly comparable. He nevertheless attempted the comparison by making allowances for the differences in the property he compared.

Mr. Ralph Lackey, a licensed real estate broker, also testified for Mr. Barnett. He similarly opined that the highest and best use of the property was for a motel and based this on the lack of competition; the proximity to a restaurant and service station; the traffic flow; the availability of employees; and the available service road across the Parkway. By means of the "land residual approach", he valued the property at $27,966 with the difference in his valuation and that of Mr. Crossley resulting from the variations in estimates used in the equation. Mr. Lackey also attempted a sales comparison approach to value the land and reached a final conclusion that it was worth $26,000.

A final defense witness, Mr. V. Stewart Underwood, opined that the subject property was worth $70,000 based on a projected 48 motel units with an approx-

imate return of $1,500 per unit. However, Mr. Underwood had not seen the property prior to the morning of the hearing and his valuation was notably less refined that that of the other defense witnesses.

The government called three witnesses in support of its theory that the subject property was best suitable for a private recreational facility. Mr. Carl Vause, the Manager of the Peaks of Otter facilities loated 54 miles to the south on the Parkway, testified that the average annual occupancy rate for the Peaks of Otter was approximately 70%; that in 1968, his company had foreseen no need for additional motel facilities on the Parkway; and that the Whetstone Ridge facilities were operated for only six months a year. But he also testified that 20 additional motel units could be utilized at the Peaks of Otter by the 1972 season.

Mr. William Hooper, a land management specialist of the Department of the Interior, testified that approximately 75,000 persons utilized the Parkway in the area of the Whetstone Ridge facilities between January and November, 1970; that commercial vehicles cannot use the Parkway; and that advertising signs are not permitted but signs indicating nearby facilities such as restaurants and motels are used.

The government's expert witness was Mr. Oscar Beasley, a licensed real estate broker and professional real estate appraiser with 25 years experience. He testified that he first became acquainted with the subject property in 1968 when he was employed by the National Park Service to appraise a large number of properties along the Parkway. He opined that the highest and best use of the property was for private recreational use as a summer cottage noting that it was typical of thousands of other properties along the Parkway. He stated that he had checked between ten and fifteen arms-length sales made within a fifteen mile radius of the property and determined a value for the land of $250.00 per acre. To this he added a value for the cost of improvements, less depreciation ($2,800), and concluded that the fair market value of the property at the date of taking to be $3,600. Mr. Beasley stated that the property was not suited for a motel because of the available motels on the Parkway and in certain nearby cities; and additionally, he did not believe that a private enterprise, such as Mr. Barnett contemplated, could compete with the subsidized federal facilities on the Parkway except in the case in which it was located on a major cross highway.

Based on the instructions approved by the court, the Commission was directed to value the subject property on the date of taking in terms of its "highest and best use" which if not the actual use "must be a use which the credible evidence shows was probable on the date of taking or in the reasonably near future." Beginning with the opening statements by counsel, the entire hearing focused on the competing theories offered by the parties concerning the highest and best use of the property in 1968. The Commission obviously did not find persuasive the government's argument that the highest and best use of the land was for private recreational purposes, but instead accepted defendants' theory of a motel site. From the record, this court has no difficulty in affirming the Commission on this point. The testimony of Mr. Barnett that he had purchased the land and directed his efforts toward building a motel was readily believable when buttressed by that of three experts who opined that the highest and best use of the land was for a motel. In addition, the Commission viewed the land and thus had the benefit of a first hand observation of the natural advantages testified to by the three experts as making the property particularly suitable for a motel. In short, the court is of the opinion that the record amply demonstrates by a preponderance of the evidence that the probable highest and best use of the land at the time of condemnation was for a motel.

**34**

Since the Commission could have, and apparently did find the subject property suitable for a motel, in light of the range of values expressed by defendants' witnesses, the value of $18,000 was clearly within the limits of the evidence. This value was less than the values testified to by defendants' experts which ranged from $26,000 to $80,000. But in view of the entire record, the court finds this to be quite reasonable. Two of defendants' experts had used the "land residual approach" in reaching the disparate values of $26,000 and $79,600 with the difference apparently resulting from the use of different estimates as to the several variables. These experts had further sought to corroborate these results by comparing the subject land with certain other parcels which had been purchased or leased for a motel in the general area by making allowances for the substantial differences. The court is of the opinion that this expert testimony provided a rational foundation for the award of $18,000 as the value of the subject property in 1968 as a motel site. The fact that this value was considerably less than the most conservative estimate offered by defendants' expert witnesses is readily explicable when the opinions of defendants' experts are considered in light of the evidence presented by the government. For example, Mr. Lackey's estimate of $26,000 was based on seven months per year of use with 10% vacancies. However, Mr. Vause testified for the plaintiff that the Peaks of Otter motel, 54 miles to the south, had an average occupancy of only 70% and that the Whetstone Ridge facilities were open only six months of the year. Factors such as these, while not overcoming the defendant's case that highest and best use of the land was for a motel, quite properly influenced the ultimate valuation placed on the land as a motel site.

In summary, this court is of the opinion that once the subject property's highest and best use was found to be as a motel site, the valuation of $18,000 was rationally supported by a preponderance of the evidence.

Accordingly, for the reasons stated, it is the judgment of this court that the award of $18,000 as just compensation for the taking of the subject land (Tract 1E–2065) be, and the same hereby is, affirmed.