WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Jerome
Snider, et al., and Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Dale As-
sociates, et al., and Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Ronald
M. and Catherine J. Beard, et al., and
Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, George
A. Herbert and Aileen H. Herbert, et al.,
and Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Marie A.
Halleren, et al., and Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Phillis B.
Watson, et al., and Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Roy M.
Coffman, et al., and Unknown Owners.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

v.

ONE PARCEL OF LAND IN MONTGOM-
ERY COUNTY, MARYLAND, Pauline
C. Hardy, et al., and Unknown Owners.

Civ. Nos. HM 80–2872, R 80–2929, JH 80–
2512, H 80–3012, N 80–2178, M 80–2662,
HM 80–2177 and HM 80–2507.

United States District Court,
D. Maryland.

Sept. 20, 1982.

Donald F. Rosendorf and John L. Davis, U.S. Dept. of Justice, Land Acquisition, Washington, D.C., for plaintiff.

R. Edwin Brown, Rockville, Md., for defendants.

Before EDWARD S. NORTHROP, Senior District Judge, and ALEXANDER HARVEY, II, JAMES R. MILLER, Jr., HERBERT F. MURRAY, JOSEPH C. HOWARD and RAMSEY, District Judges.

## MEMORANDUM

### I.

There are eight condemnation cases filed by the plaintiff pursuant to the Declaration of Taking Act, 40 U.S.C. § 258a (1976), to condemn deep underground easements in the defendants' properties, through which the tunnels containing the Washington Metro subway will run. The easements condemned by the plaintiff include the right to "review but not to approve plans and specifications for excavation or construction above or adjacent to" the properties through which the subsurface easements run.

These eight cases were consolidated for trial before the Land Commission of this Court, pursuant to Order of Reference, and they were tried together during a period of eight days in October, 1981. The Commissioners viewed the property prior to trial. After trial, the Land Commission filed its reports, awarding varying amounts as just compensation for the takings herein. The plaintiff has filed exceptions to the Land Commission's report in each case. The defendant landowners have filed exceptions in all but one case (*WMATA v. Hardy,* Civil No. HM 80–2507). Because all the exceptions treat identical legal issues in these consolidated cases, the undersigned judges (Northrop, Harvey, Miller, Murray, Howard, and Ramsey, JJ.) have joined in issuing this opinion, and all concur in the reasoning and results expressed herein.

### II.

Except for the testimony of the individual landowners presented in the defendants' case in chief, all the evidence in these cases related *pari passu* to all eight of the properties involved. That is, the expert testimony as to subsoil composition and settlement, the testimony of other expert witnesses, and the valuation methods employed by the parties' respective appraisers all applied to all eight individual cases. In that the plaintiff's appraiser, Mr. Dieudonne, did not think that the fair market value of any of the eight properties was diminished by the taking, his assessment of nominal damage ($100.00) did not vary from case to case. On the other hand, the landowners' appraiser, Mr. Beasley, calculated a before value for each property and applied to it a percentage reduction in value due to the taking to arrive at his conclusion of after value. The percentage varied from case to case, influenced by factors such as the size of the portion of the property affected and the depth of the tunnel through the particular property. In each case, although generally adopting Mr. Beasley's approach, the Land Commission awarded a lower percentage reduction in land value as just compensation. In no case did the Commission award compensation for damage to the above ground improvements on a property, although Mr. Beasley was of the opinion that there was damage to the improvements. Mr. Beasley's before land values, his percentage reductions in land value, the Land Commission's percentage reductions in land value, and the amount of just compensation awarded in each case are tabulated below:

| Case No. | Beasley Before Values | Beasley Percentage | Land Comm. Percentage | Amt. of Comp. |
|---|---|---|---|---|
| HM 80–2872 | $685,000 | 20% | 7% | $47,940.38 |
| R 80–2929 | $586,000 | 50% | 10% | $58,574.00 |
| JH 80–2512 | $ 44,000 | 30%. | 10% | $ 4,389.30 |
| H 80–3012 | $240,800 | 50% | 10% | $24,084.00 |
| N 80–2178 | $ 25,300 | 30% | 10% | $ 2,530.85 |
| M 80–2663 | $ 28,200 | 30% | 10% | $ 2,817.50 |
| HM 80–2177 | $ 29,800 | 30% | 10% | $ 2,978.85 |
| HM 80–2507 | $ 20,640 | 30% | 10% | $ 2,064.00 |

### III.

The report of a land commission appointed pursuant to Fed.R.Civ.P. 71A(h) is treated under the Federal Rules as the report of a special master in a non-jury case pursuant to Fed.R.Civ.P. 53(e)(2). The standard of review specified therein is tantalizingly brief: "In an action to be tried without a jury, the court shall accept the master's findings of fact unless clearly erroneous." The Supreme Court elaborated upon that standard in the case of *United States v. Merz,* 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964), in which it was held that, in order for the district court meaningfully to review a land commission's report for clear error, the report must be sufficiently detailed as to show the path followed by the commissioners in reaching the amount of their award. 376 U.S. at 199, 84 S.Ct. at 643. In particular, the report must demonstrate to the reviewing court the reasoning used by the commissioners in deciding on a particular award, the standards the commissioners followed in evaluating evidence, and the line or lines of testimony they adopted in making their findings. 376 U.S. at 198, 84 S.Ct. at 643. With this principle in mind, the Court has considered the exceptions to the Land Commission's reports in the instant cases, and has concluded, first, that the reports are sufficiently detailed to pass muster under *Merz,* and, second, that none of the specific exceptions to the reports involves a clear error of fact or an error of law warranting rejection of the Commission's report.

The plaintiff contends that the reports fail to meet the standards of specificity required by *United States v. Merz.* These cases consumed eight days of trial, involving 19 witnesses. The Commission rendered a lengthy report in each case, stating the description of the property, the nature of the taking, a synopsis of the testimony of the witnesses, and a series of enumerated findings specifically addressing the issues of highest and best use, damage to the improvements on the property, and damage to the property exclusive of improvements. The Commissioners evaluated the competing lines of valuation testimony given by the two sides' appraisers (Messrs. Beasley (landowners) and Dieudonne (WMATA)) and found that Mr. Beasley's testimony with respect to land value was more persuasive.

The plaintiff contends that the Commission should have specified its reasons for rejecting much of plaintiff's evidence. There is no such requirement recognized in the case law. *United States v. 573.88 Acres of Land, More or Less, etc.,* 531 F.2d 847, 849 (7th Cir. 1976). Certainly, a land commission is not required to evaluate every piece of evidence and every line of testimony presented to it. If this were the case, its report would be almost as bulky as the trial transcript itself. The Court's review of the Commission's reports in these cases indicates that the Commission did not render reports that were "so bare and sparse as to provide no basis for developing whether they are or are not clearly erroneous." *United States v. 452.876 Acres of Land, etc.,* 667 F.2d 442, 444 (4th Cir. 1981). When compared with reports found acceptable in cases cited in *United States v. 452.876 Acres* (*see, e.g., United States v. Certain Parcels of Land, etc.,* 384 F.2d 677, 681 (4th Cir. 1967) and *Morgan v. United States,* 356

F.2d 17, 23 (8th Cir. 1966)), the reports in these cases clearly emerge as sufficient.

## IV.

■ The Court will now address the plaintiff's specific exceptions to the reports, *seriatim.* Plaintiff first contends that the testimony of defendants' expert appraiser, Mr. Beasley, was unworthy of belief and should have been rejected by the Commission, because Mr. Beasley did not personally verify certain underlying data that he used, both in defendant's case in chief and in rebuttal, as a basis for his valuation conclusions. In essence, the plaintiff contends that Mr. Beasley lied, in that he stated on direct that he had made certain investigations of underlying data (such as comparable sales), whereas, on cross-examination, he admitted that much of this underlying data was compiled by staff members in his organization and by other persons employed by him for case preparation. The Court has examined the specific transcript references cited by plaintiff in support of its first exception (Tr. 430, 616–21, 1352, and 1370) [1] and has concluded that the exception is devoid of merit. Nothing in the Federal Rules of Evidence prohibits an expert from relying on the work of others in formulating his ultimate opinion. If anything, the Rules can be said to encourage the opposite. Under Fed.R.Evid. 703, an expert is clearly permitted to base his opinion on any facts or data "perceived by *or* made known to him at or before the hearing." (Emphasis added). Clearly, that rule was intended to permit an expert to give an opinion based on something other than his own direct perceptions, which would not be the case were he an ordinary fact witness. *See* Fed. R.Evid. 602. The Court is not impressed by plaintiff's accusation that Mr. Beasley's testimony was so incredible as not to constitute a sufficient basis for the Commission's findings of fact. The credibility of witnesses is a matter left entirely to the discretion of the trier of fact in this type of case. *See* Commission Instruction # 30. Although

the extent of Mr. Beasley's personal involvement in gathering factual data in support of his opinion is a matter that bears on the weight that the Commission should have given to Mr. Beasley's testimony, it does not render Mr. Beasley's testimony incompetent as a matter of law. The Court is convinced that Mr. Beasley did not intend to mislead the Commission or to falsify his testimony in any regard. For all these reasons, plaintiff's first exception is unmeritorious.

Plaintiff's second exception is that Mr. Beasley's testimony as to after-take value was not legally competent to establish compensatory damage. As is true of most condemnation cases, the present cases involved directly conflicting expert testimony. Mr. Beasley, testifying for the landowners, established a before value for each property. Then, based on the physical and legal detriments to the landowners' "bundle of rights" resulting from the imposition of the easement in each case, Mr. Beasley, utilizing his considerable experience in evaluating railroad, utility and other easements (including tunnel easements), concluded that there was severance damage to the landowner caused by the imposition of the easement. *See, e.g.,* Tr. 440–55. *See also* Tr. 460, applying the same appraisal rationale to all eight cases. Mr. Beasley gave an opinion on the ultimate issue of just compensation, a prerogative he was clearly entitled to exercise under Fed.R.Evid. 704. Plaintiff's appraiser, Mr. Dieudonne, on the other hand, adopted a different approach. He testified that, based on his analysis of comparable sales, there was only nominal severance damage in each case. (Tr. 1242–49). Mr. Beasley, in contrast, concluded that there were no sales that, in his opinion, were appropriate to be used in these cases as comparable sales. *See, e.g.,* Commission Report in Civil No. HM 80–2872 at 5; Tr. 636, 1351–66.

■ The plaintiff's exception to the Commission's reliance on Mr. Beasley's testimo-

---

1. The transcript of the consolidated cases (eight volumes) has been docketed and filed in

Civil No. HM 80–2872.

ny stems from its conviction that, since its appraiser used a comparable sales approach whereas Mr. Beasley did not, its appraiser's testimony, being the only testimony based on market data, was the only competent evidence of after value in the entire case. In so contending, plaintiff clearly misreads the thrust of Article VII of the Federal Rules of Evidence. Those Rules evince a clear intent to broaden the role of expert testimony in federal litigation. There is nothing in the Rules that prohibits an expert from basing his opinion on an entirely different set of criteria from those employed by another expert in addressing the same issue. The Court has carefully reviewed Mr. Beasley's testimony outlining the rationale for his opinion. (Tr. 440–55).[2] Mr. Beasley paid careful attention to many variables that influence market value, including future development potential and possible weakening of the subsoil, both of which can readily be seen to be directly implicated in the plaintiff's taking in these cases. The Commission did not err in accepting Mr. Beasley's valuation testimony as more persuasive than that of Mr. Dieudonne. There was no inherent flaw in Mr. Beasley's research, his methodology, or his testimony, and his testimony constituted competent evidence which the Land Commission properly considered.

The plaintiff also contends as part of its first exception that the Commission improperly construed the plaintiff's right to review future building plans as a compensable element in calculating the severance damage in these cases. (*See* Commission report at 10, finding 4.)[3] There was evidence that the right to review plans includes not only the right to look at them, but also the very strong possibility that, if the plans do not meet WMATA's requirements, WMATA would request the local permit issuing authority not to issue a building permit until WMATA's requirements were satisfied. (Commission report at 6). Plaintiff does not dispute the evidence on this point, but relies on language in the Declaration of Taking stating that all that has been condemned with regard to plans is a right to review, not a right to approve. In view of the admissions of plaintiff's own witness, relied upon by the Commission in finding that a right to review was functionally equivalent to a right to approve, plaintiff is in no position to take exception to the Commission's inclusion of the right to review as a compensable element of damage in these cases. Thus, plaintiff's second exception is unmeritorious.

Plaintiff's third exception is that a Mr. Meyer, a professional engineer, was improperly allowed by the Commission to testify in defendants' rebuttal case. (Tr. 1322–50). It appears that Mr. Meyer was not listed in the pretrial order as a defendants' expert, and that, accordingly, he did not testify in the defendants' case in chief. When his rebuttal testimony was put on the record, plaintiff objected. (Tr. 1330). Review of the record shows that Mr. Meyer testified as to future development problems arising from the tunnelling under defendants' properties, establishing that future development would be rendered more expensive and more time-consuming because of the imposition of plaintiff's easement. *See, e.g.,* Tr. 1332–35. The Court has reviewed Mr. Meyer's testimony and it concludes that the Commission did not err in allowing him to testify as a rebuttal witness. Unlike most civil cases, the defendant in a condemnation case bears the burden of proof on the cardinal issue to be litigated. In recognition of this peculiarity, the defendants in these cases presented their case in chief before the plaintiff's case in chief. Al-

---

**2.** The plaintiff does not in any way impugn Mr. Beasley's credentials as an expert appraiser. In fact, during the *voir dire* of plaintiff's own appraiser, Mr. Dieudonne, it was brought out that he had worked with both Mr. Beasley and Mr. Beasley's father as a staff instructor and consultant in an advanced training program they had established for real estate appraisers. (Tr. 1212).

**3.** All references to *Commission Report* are to the Report rendered in Civil No. HM 80–2872, which is suitable to serve as a general reference as to the points discussed in the text.

though Mr. Meyer probably presented, in rebuttal, substantially the same testimony that he would have presented if allowed to testify in defendants' case in chief, it is clear that he was in fact rebutting plaintiff's assertion that the landowners' damage in each case was nominal. Unlike the rebuttal witness in *WMATA v. Two Parcels of Land,* 569 F.2d 816 (4th Cir. 1978), Mr. Meyer did not introduce a new theory of the case during rebuttal. Rather, his testimony tended directly to refute specific evidence of non-damage introduced by the plaintiff in its case in chief. Thus, the impact of the rebuttal testimony here was not at all like that in *WMATA v. Two Parcels of Land,* wherein the Fourth Circuit characterized the improper rebuttal testimony as "not only a violation of a pretrial order; [but also] an apparently wholly unanticipated injection into the case of new concepts and new considerations with which counsel . . . were unprepared to deal." 569 F.2d at 819. Therefore, plaintiff's third objection to the Report is unmeritorious.

■ Plaintiff's fourth exception is that the Commission improperly considered effects of construction blasting. Prior to the trial of these cases, Magistrate Smalkin ruled that no evidence of damage to the improvements on the condemned property due to WMATA blasting in the general vicinity could be presented to the Land Commission. Neither plaintiff nor any defendant took any exception to that ruling at the time, nor does anyone except to it now. It is clear from the Commission's reports that it ruled out any damage to the improvements due to blasting during the construction of the tunnel. *See, e.g.,* Commission Report at 9–10, finding 2. Plaintiff's present exception focuses on the testimony of defendants' expert geologist, Dr. Berry. The Court has reviewed Dr. Berry's testimony (Tr. 34–110–A), and it finds that the Commission did not improperly allow Dr. Berry to give evidence as to blasting damage. In fact, Dr. Berry was expressly prohibited from giving testimony as to blasting damage. *See, e.g.,* Tr. 36. Dr. Berry did testify as to differential subsoil settlement due to the placement of tunnels below the surface of defendants' property and the accompanying potential for future adverse effects on the property, which testimony was relevant, of course, to the issue of just compensation. *See, e.g.,* 49–52. Contrary to plaintiff's assertion, the Commission did not elevate blasting damage to a pre-eminent role in evaluating Dr. Berry's testimony. Rather, the Commission characterized Dr. Berry's testimony only as relating to potential harm posed by tunnelling under the surface of defendants' properties. (Commission Report at 2). In giving his opinion on the adverse consequences of tunnelling, Dr. Berry was not prohibited by either common sense or the pretrial ruling in these cases from taking into account the fact that blasting was a construction technique employed by the plaintiff in making its tunnels. *Cf.* Fed.R.Evid. 703. Clearly, the intent of the Magistrate's pretrial ruling was to prevent the Commission from improperly awarding damages for wall or window cracking, or other damage attributable to underground blasting that could not be localized with any degree of precision, or that might have been caused by a contractor's negligence. Dr. Berry's testimony as to possible soil weakness caused by the Metro construction did not in any way constitute an improper line of testimony in these cases.

Plaintiff's final exception is that the reports in these cases fail to meet the review criteria of *United States v. Merz.* For reasons adequately stated above, this Court finds that the report is sufficient under the *Merz* standards.

### V.

The defendant has also taken exception to the Land Commission's reports in all cases except Civil No. HM 80–2507. In each of the consolidated cases, Mr. Beasley presented a percentage by which he thought that the taking had diminished the value of the property. *See, e.g.,* Tr. 516–20. The Land Commission, in each case, rejected Mr. Beasley's percentage figure of damage and, instead, found that the percentage

diminution in value due to plaintiff's taking was less than that testified to by Mr. Beasley. The table in Part II of this opinion, *supra*, details the percentages in each case. In making the adjustments to Mr. Beasley's figures, the Commission considered the comparables used by Mr. Beasley, the depth of the tunnel, and the requirement in the easement concerning plaintiff's right to review plans for future construction. The Commission determined that the lower figure it employed in each case was "most realistic."

▬ The defendant now contends that the Commission was bound to accept Mr. Beasley's damage figure without adjustment. Although it has been held that a land commission is not to substitute its own expertise for competent evidence in the case, *United States v. Merz,* 376 U.S. at 197, 84 S.Ct. at 642, it is also true that "commissioners are not required to explain the exact thought processes they utilized nor are they required to develop and apply a mathematical formula which can be programmed, computerized and then reviewed by the district court like an algebraic equation." *United States v. 573.88 Acres of Land, etc.,* 531 F.2d at 849. It has also been held that, so long as the value derived by the commission is "within the range of testimony as to severance damages adduced before the commission," the report is adequate and will be accepted, absent the district court's perception of clear error in the findings. *United States v. Certain Parcels of Land, etc.,* 384 F.2d at 681. The limitation on this rule is, of course, that expressed in *United States v. 452.876 Acres of Land, etc., i.e.,* that the Commission's valuation finding be something "more than an unexplained result." 667 F.2d at 445. In these cases, the Land Commission's careful review of the evidence, its reference to the factors it used in adjusting Mr. Beasley's percentage figures downward and the thoroughness of its consideration of the evidence "make understandable the process by which the commission arrived at its determinations of value." *Id.* If the Court were to hold otherwise, it would render the Commission substantially impotent, requiring it to accept, without

adjustment in light of common sense and of other evidence in the case, one of the two competing theories of damage—lock, stock, and barrel. Thus, in these cases, if the Commission decided that something more than nominal damage was merited, it would, under the defendants' theory, be compelled to accept the Beasley percentage conclusions, even though Mr. Beasley himself did not break down those conclusions by attributing specific percentage reductions in after-value to specific components of the landowner's loss, such as, *e.g.,* a 5% decline in value attributable to plaintiff's acquisition of the right to review plans, and so forth. Plainly, the Commission, as finder of fact, is not required to reduce its reasoning to mathematical formulae. *United States v. 573.88 Acres of Land, etc.* Consequently, the Court finds that the Commission's action in fixing the just compensation at a lower percentage of the before value of each property than that claimed by Mr. Beasley was not clearly erroneous. The Commission's valuation conclusions will therefore be accepted by the Court. Fed.R. Civ.P. 53(e)(2).

▬ Finally, the defendant complains that the Land Commission improperly rejected Mr. Beasley's testimony that improvements on the properties were damaged by the taking. Mr. Beasley testified that the improvements suffered "economic and functional obsolescence." The Land Commission found as a fact that no damage to the improvements resulted from the taking, and that any damages that may have been incurred by the improvements occurred after the date of taking and were due to actual construction of the tunnel. The date of taking in these cases was fixed at October 1, 1980, well before the start of the tunnel construction. Because only subsurface easements were condemned in these cases, any compensation for damage to physical structures above ground due to construction methods employed by WMATA's contractors is properly recoverable only in tort actions against those contractors, or in actions against WMATA for inverse condemnation or trespass. Conse-

quently, the Commission did not err in refusing to award post-taking damages for physical harm (portrayed by Mr. Beasley as "economic and functional obsolescence") to the existing above ground improvements in these cases.

For the reasons stated above, all exceptions to the Land Commission's report are hereby overruled, and an order will be entered separately adopting the same and directing the defendants' counsel to submit in each case, within 10 days of the date hereof, a judgment awarding just compensation in the amount fixed by the Commission, and directing distribution of the same.