812 F.2d 216
 UNITED STATES of America, Plaintiff-Appellee,
v.
24.48 ACRES OF LAND, etc., et al., Defendants,
and
Mrs. R.S. (Cordie) LOYD, F. Marion Loyd, Tina Loyd, Harold
N. Loyd, Clydell Loyd, Leatrice Loyd Skinner,
Curtis Skinner, and Robert S. Loyd,
Defendants-Appellants.
 No. 86-1574.
 United States Court of Appeals,
Fifth Circuit.
 March 12, 1987.
 
 Leatrice Loyd Skinner, Arlington, Tex., pro se.
 Curtis Skinner, Arlington, Tex., pro se.
 Mr. and Mrs. Robert Loyd, Mansfield, Tex., pro se.
 Mr. & Mrs. F. Marion Loyd, Euless, Tex., pro se.
 Mr. & Mrs. Harold N. Loyd, Arlington, Tex., pro se.
 Guy E. Wall, New Orleans, La., for defendants-appellants.
 Jacques B. Gelin, Appellate Section, Land & Natural Resources Div., Dept. of Justice, Wash., D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Texas.
 Before GEE, REAVLEY, and JONES, Circuit Judges.
 GEE, Circuit Judge:
 
 
 1
 The former owners of 24.48 acres of land in Tarrant County, Texas, collectively referred to as the Loyds, appeal the district court's approval of the Commission's condemnation award for their property. We find no error in the district court's ruling and, therefore, affirm.
 
 
 2
 In 1981 the United States condemned by the power of eminent domain the Loyd's land in connection with an Army flood project that is now the Joe Pool Reservoir. The United States deposited $179,725 into the court's registry and gained immediate possession of the land. The Loyd's objected to the amount of compensation. In 1984 the district court appointed three Commissioners to determine the amount of just compensation due to the Loyds. The Loyds argued before the Commission that there was gold in them thar hills. Alternatively, they asserted that there was at least valuable sand and gravel in the land. They also argued that comparable property had sold for substantially more than the award they received. After a one-week trial in 1985, the Commission found that the highest and best use of the land was for speculative land development. It reviewed the sales of comparable land and found the land's value to be $180,000. The Loyds promptly objected to the Commission's report; however the district court entered a final judgment in accordance with the report.
 
 
 3
 The Loyds first challenge the district court's reviewing process, claiming that the court did not review the transcripts of the evidence before the Commission. The court's docket sheet reflects the filing of the transcripts in December 1985, and its order approving the Commission's award was signed on July 1, 1986. In addition, the district judge specifically stated in his order adopting the report that he considered "the transcript of the testimony of the hearing before the Commission" and the exhibits. We shall not question the district judge in this situation.
 
 
 4
 The appellants next attack the Commission's findings. Rule 71A(h) of the Federal Rules of Civil Procedure dictates that we review the Commission's report under the clearly erroneous standard found in Rule 53(e)(2). The Loyds challenge primarily the Commission's reliance on the government experts' testimony as to comparable sales as opposed to their evidence. In connection with this attack they contend that the report contains only conclusory findings; findings prohibited by the Supreme Court. See United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964). Reviewing the record and the Commission's findings, we find that the Commissioners' reliance on the government's evidence was not clearly erroneous.
 
 
 5
 First, we reiterate the principle that the best evidence of market value is comparable sales. United States v. 8.41 Acres, 680 F.2d 388, 395 (5th Cir.1982). The Loyd's evidence of comparable sales came from the testimony of Marion Loyd, one of the landowners, and admittedly not an expert. Mr. Loyd testified on the basis of deed records of two sales of property located one and one-half miles north of the Loyd land. One sale was for $7,722 an acre and the other was for $14,492.30 an acre. The government, on the other hand, presented testimony from two qualified experts, James Daniels and William Oswald, both knowledgeable of the real estate values in the area. They both analyzed numerous sales in the vicinity of the Loyd property. Mr. Daniels determined the fair market value of the property to be $179,725. Mr. Oswald testified that $134,500 was a better estimate. The Commission found "the sales presented by Mr. Daniels to be more comparable and realistic" than those presented by the Loyds. Report of Commissioners, at 8. Although the Commission did not elaborate the particular reasons for rejecting the Loyds' evidence of comparable sales, we find it obvious that they placed greater weight on the expert testimony than on the opinion evidence of an interested party. We hold that such reliance is neither clearly erroneous nor merely conclusory.
 
 
 6
 The Loyds also fault the Commission for failing to credit their evidence that they were sitting on a gold mine. The Loyds presented three expert witnesses who testified to the abnormally high gold content of the soil. The soil samples, however, were small and two of the experts said they needed to conduct more tests before they could determine if gold-mining was commercially feasible. The government, on the other hand, presented experts who testified that their assays on numerous and voluminous samples from the Loyd property revealed no commercially valuable quantities of gold. The Commissioners' report presented both sides of the evidence and found the government's testing more reliable, "based in part on the number of separate assays the Government had conducted but also upon the representative sampling procedures used." Report of the Commissioners, at 6. We hold that such a finding was not clearly erroneous.
 
 
 7
 The Loyds' last challenge to the Commissioners' report involves the sand and gravel on the property. For three and one-half months before the condemnation, the land had been commercially excavated for sand and gravel and the Loyds had received almost $12,000 in royalties. The Loyds introduced evidence showing the total value of the sand and gravel left on the land and urged the Commission to apply an income capitalization formula to determine just compensation. The Commission decided to follow the government's expert testimony as to the value of the sand and gravel on a comparable sale basis. As we noted earlier, comparable sales are the best measure of market value. Because of the availability of this testimony, the Commission did not need to rely on other methods such as income capitalization. The Commission's report is not clearly erroneous in this respect.
 
 
 8
 The Commission's report is neither clearly erroneous nor conclusory. Accordingly, we AFFIRM.